**Carl R. DUNCAN, on behalf of himself and all others similarly situated, Plaintiff-Appellant,**

**v.**

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Defendant-Appellee.**

No. 79–3112.

United States Court of Appeals,
Fifth Circuit.
Unit B

June 1, 1981.

George W. Wright, Jr., James W. Crabtree, Miami, Fla., for plaintiff-appellant.

Brown, Wood, Ivey, Mitchell & Petty, E. Michael Bradley, New York City, Walton, Lantaff, Schroeder & Carson, Bennett Falk, Miami, Fla., for defendant-appellee.

Before GODBOLD, Chief Judge, MORGAN and HENDERSON, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This is an appeal from a district court order granting the defendant's motion to disqualify the law firm representing the plaintiff in a complex securities fraud action. Two questions are presented for our review. First, we must decide whether an order granting a disqualification motion is a "final decision" immediately appealable to this court under 28 U.S.C. § 1291. Finding

that such an order is an appealable final decision, we have jurisdiction to consider the second question of whether the district court properly determined that disqualification of the law firm representing the plaintiff was required in this case. For reasons discussed below, we conclude that the district court misallocated the burden of proof applicable in a disqualification proceeding and failed to make the painstaking factual analysis required by our cases. We therefore remand for further proceedings.

I.

In November 1978 Carl R. Duncan filed a complaint against Merrill Lynch, Pierce, Fenner & Smith, Inc., alleging that Merrill Lynch had made untrue statements of material fact and had omitted to state material facts in connection with the sale of certain municipal bonds to Duncan. Duncan retained the law firm of Smathers & Thompson to represent him in the action. Suing on behalf of himself and all others similarly situated,[1] Duncan asserted that Merrill Lynch had violated unspecified provisions of the federal securities laws, Regulation T of the Federal Reserve Board, 12 C.F.R. § 220, and the Florida blue sky statute, Chapter 517, Fla.Stat. He also alleged common law fraud and breach of fiduciary duties and, in an amended complaint, claimed violations of the Florida usury laws.

The complaint briefly sketched the common questions of fact upon which the alleged violations were founded. Duncan claimed that in purchasing and selling bonds for its customers Merrill Lynch had (1) acted as an undisclosed principal, (2) sold bonds out of its own inventory without disclosing that the bonds were available elsewhere at a lower price, (3) obtained commitments from customers for bond purchases at a specified price and then had purchased the bonds in the market at a lower price, (4) purchased bonds from cus-

[1]. Although Duncan's complaint contained class action allegations, the district court, on a motion by Merrill Lynch, stayed the action pending a resolution of the disqualification question and thereby prevented any discovery on the class action question and precluded Duncan from filing a motion that the action be maintained as a class action.

tomers at below the market price without advising that the bonds would obtain a higher price in other markets, and (5) failed to advise customers that it charged a commission on its bond transactions. Duncan further alleged that Merrill Lynch had, in violation of Regulation T, manipulated "buying power" generated in customers' margin accounts to reduce the amount of cash necessary for purchases in customers' cash accounts. Duncan, for himself and on behalf of the purported class, demanded compensatory damages in an amount estimated to exceed $10,000,000, punitive damages in an amount estimated to exceed $100,000,000, attorneys fees and costs, and an injunction against future occurrences of the alleged violations.

Rather than responding to the complaint, Merrill Lynch filed a motion to disqualify the law firm of Smathers & Thompson from representing Duncan or any other member of the purported class in the action. Merrill Lynch asserted that Smathers & Thompson had previously represented it in a number of cases that bore a "substantial relationship" to the issues raised in Duncan's action. Relying on Canons 4 and 9 of the American Bar Association Code of Professional Responsibility,[2] Merrill Lynch argued that Smathers & Thompson should be prohibited from utilizing the confidential and privileged information acquired by the firm during its previous representation of Merrill Lynch.

As evidence of the requisite "substantial relationship" between the prior representation and the present suit, Merrill Lynch filed an accompanying affidavit of one of its vice presidents listing ten different matters in which Smathers & Thompson had represented Merrill Lynch over a ten year period. The affidavit did not separately discuss the nature of these cases but stated generally that these matters

involved stock, commodities, municipal and government securities, margin accounts, Merrill Lynch's relationships with its customers, Merrill Lynch's relationships with its employees, Merrill Lynch's procedures and its records, the rules and regulations of various regulatory bodies, the federal securities laws, the Florida securities laws and specifically Chapter 517, class actions and common law. The work performed by the Smathers firm has included reviews of Merrill Lynch records, conferences with Merrill Lynch officers and employees, legal research, depositions, interrogatories, requests to produce, expert witnesses, hearings, motions, trials and appeals. The Smathers firm has performed its work in various parts of Florida and in New York, and attorneys in the Merrill Lynch Law Department have worked closely with lawyers from the Smathers firm, as have other Merrill Lynch representatives who were involved in the matters. In connection with these listed cases, Merrill Lynch has paid the Smathers firm some $85,000 in the last five years.

The affiant then noted that in the case *McCormick v. Esposito*, 500 F.2d 620 (5th Cir. 1974), *cert. denied*, 420 U.S. 912, 95 S.Ct. 834, 42 L.Ed.2d 842 (1975), Smathers & Thompson had defended a stock brokerage firm, Goodbody & Co., which had been acquired by a wholly owned subsidiary of Merrill Lynch in 1970. The affiant observed that the plaintiff in *McCormick* had alleged violations of Regulation T and of the New York Stock Exchange Rules relating to maintenance margin requirements and suggested that the *McCormick* case involved issues "remarkably similar" to those presented in the Duncan case.[3]

---

**2.** ABA Code of Professional Responsibility [hereinafter cited as ABA Code]. Canon 4 states that "[a] lawyer should preserve the confidences and secrets of a client." Canon 9 states that "[a] lawyer should avoid even the appearance of professional impropriety."

Local Rule 16(E)(4) of the United States District Court for the Southern District of Florida

adopts the ABA Code as the standard for professional conduct in that court.

**3.** The affiant also referred to a case filed in state court styled *Behar v. Merrill Lynch*. In September 1977 Earl Waldin, a member of the Smathers firm, entered an appearance as co-counsel on behalf of Sami and Matilde Behar in an action they had filed against Merrill Lynch

In the memorandum accompanying its disqualification motion Merrill Lynch, in addition to restating each allegation made in the affidavit, elaborated somewhat upon two of the ten cases listed by the vice president in his affidavit. Merrill Lynch stated that in *Alderson v. Citrus Associates of the New York Cotton Exchange, Inc.,* Smathers & Thompson had represented Merrill Lynch and three of its employees in a securities action brought by a plaintiff who had maintained a margin account with Merrill Lynch. The memorandum stated that

> [t]he *Alderson* case involved substantial amounts of discovery, including the deposition of a Merrill Lynch vice president who was an individual defendant early in the litigation. In the course of preparing responses to interrogatories and to document production requests, the Smathers firm ... was in frequent communication with Merrill Lynch for the purpose of developing the necessary information and documentation both with regard to the actions of the Citrus Associates in August, 1971 and with regard to Merrill Lynch procedures for handling margin accounts.

The memorandum further noted that in *Merrill Lynch, Pierce, Fenner & Smith v.*

*Byrne,* Smathers & Thompson had defended Merrill Lynch against allegations that the brokerage firm had mishandled a customer "stop-order" in violation of the anti-fraud provisions of the Florida blue sky statute and of its duties under the Florida common law of fraud, negligence, and contract.

In opposition to the motion to disqualify, Duncan argued that Merrill Lynch had failed to demonstrate any relationship, much less a "substantial relationship," between Smathers & Thompson's representation of Duncan and its former representation of Merrill Lynch. Duncan described and distinguished from the present suit each of the matters referred to by Merrill Lynch in its affidavit and memorandum. Responding to the cases upon which Merrill Lynch had placed its greatest emphasis, Duncan argued that the *McCormick* case was totally inapposite because it involved events that occurred prior to the Merrill Lynch acquisition of Goodbody & Co., Smathers & Thompson's client in that action, and therefore presented no opportunity for Smathers & Thompson to learn secrets and confidences of Merrill Lynch. Duncan also presented affidavits of the two opposing counsel in *McCormick* and in *Alderson,* in which each affiant stated that his

in 1976. (Merrill Lynch had earlier employed counsel other than Smathers & Thompson to defend it in the *Behar* action and, by 1977, had ceased using Smathers & Thompson in any new cases filed in Florida.) Merrill Lynch moved to strike Waldin's appearance on the ground that Smathers & Thompson was then representing Merrill Lynch in other litigation, specifically *Alderson v. Citrus Associates.* On December 12, 1977, Waldin wrote Merrill Lynch informing it that regardless of the outcome of its motion to strike Waldin's appearance in *Behar,* Smathers & Thompson no longer desired to represent Merrill Lynch in *Alderson.* In the letter Waldin pointed out that the *Alderson* case had been stayed in March 1975 and had remained dormant since that date. Waldin further noted that since Merrill Lynch had ceased using Smathers & Thompson to represent it in Florida, the *Alderson* case was the only matter still remaining open in the firm's files.

The propriety of Waldin's appearance in *Behar* was ultimately submitted by Waldin to the Committee on Professional Ethics of the Florida Bar. After a member of the committee

rendered an oral opinion that Waldin should withdraw, Smathers & Thompson withdrew from representing the Behars.

The affiant stated, and Merrill Lynch argues in its brief, that the ethics committee "disqualified" Smathers & Thompson from further representation of the Behars. This is a misstatement. The Committee on Professional Ethics was created by the Florida Bar to "guide" its members in "construing the Code of Professional Responsibility." Fla.Bar Integr.R. By-Laws art. X. Upon request of members of the bar, the committee issues opinions concerning ethical problems arising under the Code of Professional Responsibility. These opinions are advisory only and have no binding effect upon a lawyer who chooses to ignore the advice given. If a lawyer does ignore the committee's advice, "he does so not at risk of violating the opinion, because it has no binding effect, but at risk of violating the underlying canon or [disciplinary rule] construed by the opinion." Little & Rush, Resolving the Conflict between Professional Ethics Opinions and Antitrust Laws, 15 Ga.L.Rev. 341, 345 (1981).

case involved issues that were unrelated to those raised by the Duncan complaint.

The district court, after hearing oral argument regarding the disqualification question, entered an order granting the motion to disqualify Smathers & Thompson from representing Carl R. Duncan in his action against Merrill Lynch. Relying primarily on the Seventh Circuit opinion in *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221 (7th Cir. 1978), and on the facts outlined in the Merrill Lynch affidavit, the district court concluded that "[a]lthough the previous cases may not involve the identical issues involved here, the court feels that Smathers & Thompson would certainly have been exposed to information which would be substantially related to the instant case." Because it could not "clearly discern that the issues in this case are unrelated to those previous matters," the court determined that Canons 4 and 9 were implicated and that disqualification was required.

## II.

■ Before addressing the merits of Duncan's appeal, we must determine whether an order granting a motion to disqualify opposing counsel is appealable prior to the entry of a final judgment in the underlying action.

Under 28 U.S.C. § 1291, the federal courts of appeals have jurisdiction to hear "appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court." This section, which provides the major avenue of federal appellate review,[4] has generally been interpreted as

permitting appeal only from a judgment that finally disposes of the action on the merits. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). In *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), however, the Supreme Court recognized that certain "collateral orders" which do not terminate the action on the merits are nevertheless appealable "final decisions" under § 1291. To fall within the *Cohen* exception to the final judgment rule, "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay, supra*, 437 U.S. at 468, 98 S.Ct at 2457.[5] *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. ——, ——, 101 S.Ct. 669, 674, 66 L.Ed.2d 571, 579 (1981). Because an order granting a motion to disqualify opposing counsel is not a final judgment, it is appealable only if it satisfies the requirements of the collateral order doctrine announced by *Cohen* and its progeny.

In a long line of cases, this court has held that both orders granting and denying motions to disqualify opposing counsel meet the *Cohen* requirements and therefore are immediately appealable under § 1291. *Musicus v. Westinghouse Electric Corp.*, 621 F.2d 742 (5th Cir. 1980) (denial); *Brennan's Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168 (5th Cir. 1979) (grant); *Brown & Williamson Tobacco Corp. v. Daniel Int'l Corp.*, 563 F.2d 671 (5th Cir. 1977) (denial); *Wilson*

**4.** Although there are a number of statutory provisions authorizing review of interlocutory orders, 28 U.S.C. § 1292; 11 U.S.C. § 47(a); 28 U.S.C. § 1651, none of these exceptions to the final judgment rule embodied in § 1291 is applicable here.

**5.** A number of cases from this and other circuits have relied upon language from *Cohen* that only "serious and unsettled question[s]" of law come within the collateral order doctrine. *Cohen v. Beneficial Industrial Loan Corp., supra*, 337 U.S. at 547, 69 S.Ct. at 1226. See *In re Corrugated Container Antitrust Litigation*, 611 F.2d 86, 87 (5th Cir. 1980) and cases cited therein. This circuit, however, has not insisted

upon the "serious and unsettled question" requirement with respect to interlocutory appeals from rulings on disqualification motions. *See* text accompanying note 6 *infra*. Furthermore, a very recent Supreme Court case discussing the immediate appealability of disqualification denials did not list this requirement as part of its collateral order test. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. ——, ——, 101 S.Ct. 669, 674, 66 L.Ed.2d 571, 579 (1981). Instead, the *Firestone* court utilized the collateral order test set forth in *Coopers & Lybrand v. Livesay, supra*, 437 U.S. at 468, 98 S.Ct. at 2457, which restated the *Cohen* requirements.

*P. Abraham Constr. Corp. v. Armco Steel Corp.*, 559 F.2d 250 (5th Cir. 1977) (denial); *Woods v. Covington County Bank*, 537 F.2d 804 (5th Cir. 1976) (grant); *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83 (5th Cir. 1976) (denial); *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975) (grant); *Draganescu v. First National Bank of Hollywood*, 502 F.2d 550 (5th Cir. 1974), *cert. denied*, 421 U.S. 929, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975) (grant); *Uniweld Prod-ucts, Inc. v. Union Carbide Corp.*, 385 F.2d 992 (5th Cir. 1967), *cert. denied*, 390 U.S. 921, 88 S.Ct. 853, 19 L.Ed.2d 980 (1968) (denial); *Tomlinson v. Florida Iron & Metal, Inc.*, 291 F.2d 333 (5th Cir. 1961) (denial); *see United States v. Kitchin*, 592 F.2d 900 (5th Cir.), *cert. denied*, 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979) (grant); *In re Gopman*, 531 F.2d 262 (5th Cir. 1976) (grant).[6] This term, however, the Supreme Court has ruled that an order denying a

---

6. In *North American Acceptance Corp. v. Arnall, Golden & Gregory*, 593 F.2d 642 (5th Cir.), *cert. denied*, 444 U.S. 956, 100 S.Ct. 436, 62 L.Ed.2d 328 (1979), this court held that an order denying a motion to disqualify *class* counsel is not immediately appealable under § 1291. Merrill Lynch argues that under the principles announced in *Arnall*, an order *granting* a motion to disqualify class counsel is also unappealable.

We disagree. In *Arnall* this court determined that the denial of a motion to disqualify class counsel fails to meet two of the *Cohen* collateral order requirements. First, the court reasoned that "because, in a class action, the trial court has the continuing duty to see that the class is adequately represented" and "must constantly scrutinize" the class attorney's performance, the trial court's "initial denial of the disqualification motion may not conclusively determine the disqualification issue." *Id.* at 645. This comment obviously does not hold true with respect to orders *granting* disqualification of class counsel. Disqualification is an extreme remedy that will not be imposed lightly. Once the court satisfies itself that some ethical impropriety exists that requires disqualification, it is not likely to later change its mind on the question or even have an opportunity to do so. Certainly, the court no longer has any duty to "scrutinize" the disqualified attorney. For all practical purposes, therefore, granting a disqualification motion "conclusively determine[s] the disputed question." *Coopers & Lybrand v. Livesay, supra*, 437 U.S. at 468, 98 S.Ct. at 2457.

The *Arnall* court also held that the denial of a motion to disqualify class counsel does not meet the requirement that the order "be effectively unreviewable on appeal from a final judgment." *Id.* at 645. Again, we conclude that a different result obtains with respect to orders *granting* disqualification. When a court grants a disqualification motion, the party (or parties) opposing the motion is abruptly deprived of his chosen counsel and the attorney disqualified is subjected, at least potentially, to loss of both reputation and fees. Postponing review until after final judgment would, in most instances, provide no remedy to the party or his attorney in the event that the disqualifi-

cation grant is determined to be erroneous. As we discuss below in this opinion, the court reviewing an erroneous grant of a disqualification motion is not likely to vacate the lower court's judgment and order a new trial unless the losing party establishes that he lost because he was wrongfully deprived of his chosen counsel. Few litigants could ever shoulder such a burden. Furthermore, should the party win with his new counsel, the disqualified attorney would have no means of securing review of his claim. We hold that, given this potential for irreparable harm, orders granting disqualification would be "effectively unreviewable" absent an immediate appeal. Because an order granting disqualification of class counsel also satisfies the other *Cohen* requirement "that the order resolve an important issue completely separate from the merits of the action," *North American Acceptance Corp. v. Arnall, Golden & Gregory, supra*, 593 F.2d at 645 n. 5, such an order is immediately appealable under § 1291.

We are aware that in *Zylstra v. Safeway Stores, Inc.*, 578 F.2d 102, 104 & n. 1 (5th Cir. 1978), this court held that where a disqualification question and a class certification question are "inextricably intertwined" so "that the two issues cannot be separately decided," there is no final order under § 1291. *Coopers & Lybrand v. Livesay, supra*, 437 U.S. at 469, 98 S.Ct. at 2458. Here, however, the disqualification and class certification questions can "be separately decided": if Merrill Lynch is correct that Smathers & Thompson has confidential information about Merrill Lynch that is relevant to Duncan's suit, the firm should be disqualified from representing either a class or an individual plaintiff. Thus, the ethical consideration raised by the disqualification motion does not depend upon and can be decided totally apart from any class certification question.

In *Arnall* this court, interpreting *Zylstra*, stated in dictum that "[w]henever a district court is aware of possible grounds for disqualifying the class attorney before it makes the certification decision, the disqualification issue will be a part of the certification question." 593 F.2d at 644. This statement was an unnecessary expansion of *Zylstra* and we decline to follow it. Further, we find that even if the statement

motion to disqualify opposing counsel is not a "final decision" appealable under § 1291. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. ——, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981). While it is clear that *Firestone* has overruled our case law permitting appeals from disqualification denials, that decision specifically did not address the appealability or orders *granting* disqualification motions. *Id.* at —— n.8, 101 S.Ct. at 672 n.8, 66 L.Ed.2d at 577. Technically, therefore, *Firestone* leaves intact our precedent[7] regarding the precise issue raised on this appeal. Nevertheless, because of the obvious similarity between the appealability question discussed in *Firestone* and that posed by the present case, we deem it appropriate to reexamine our cases in the light of the Supreme Court's decision.

In *Firestone* the Firestone Tire & Rubber Co. sought to disqualify the plaintiff's counsel on the ground that the counsel occasionally represented Firestone's insurer and, therefore, might be tempted to fashion plaintiff's claims for relief in a way that would minimize the insurer's liability to Firestone. Firestone appealed from the denial of its disqualification motion, arguing that the district court's order was a "final decision" under the *Cohen* collateral order doctrine. Sitting en banc, the Eighth Circuit overruled its prior decisions and held

that an order denying a motion to disqualify counsel is not an appealable final order.

Applying the *Cohen* requirements, the Supreme Court agreed with the Eighth Circuit that a disqualification denial is not immediately appealable under § 1291.[8] The Court held that an order denying disqualification meets the *Cohen* requirement that the order "conclusively determine the disputed question," and the Court assumed without deciding that such an order "resolve[s] an important issue completely separate from the merits of the action."[9] The Court concluded, however, that Firestone had made no showing that a disqualification denial is "effectively unreviewable on appeal from a final judgment." An order is "effectively unreviewable" only "'where denial of immediate review would render impossible any review whatsoever'" or, stated otherwise, where the order involves "'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.'" *Firestone Tire & Rubber Co., supra*, 449 U.S. at ——, 101 S.Ct. at 675, 66 L.Ed.2d at 580. Noting that the denial of a disqualification motion will normally be difficult to assess until after the litigation has ended, the Court reasoned that such an order "will rarely, if ever, represent a final rejection of a claim of fundamental right that cannot effectively be reviewed following judgment

were binding precedent, it would not preclude our holding that the disqualification order in this case is appealable. *Coopers & Lybrand* held that class certification denials are not appealable under § 1291 because they do not meet the *Cohen* requirements, and it was for this reason that *Zylstra* held that when class certification and disqualification questions are "intertwined" there is no § 1291 appeal. We find, however, that orders granting disqualification do satisfy the collateral order test. Under *Coopers & Lybrand*, therefore, such orders are final decisions even though they occur in the context of a class action.

7. Although prior to *Firestone* the circuits had split on the question of the appealability of disqualification denials, every circuit to have considered the question had held that orders granting disqualification motions are appealable under § 1291. See, e. g., *Armstrong v. McAlpin*, 625 F.2d 433 at 440–41 (2nd Cir. 1980), vacated on other grounds, —— U.S. ——, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981). *In re*

*Multi-Piece Rim Products Liability Litigation*, 612 F.2d 377, 378 (8th Cir. 1980), vacated sub nom. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. ·–·· , 101 S.Ct. 669, 66 L.Ed.2d 571 (1981); *General Electric Co. v. Valeron Corp.*, 608 F.2d 265, 266–67 (6th Cir. 1979).

8. After finding disqualification denials to be nonappealable, the Eighth Circuit held that its ruling was prospective only and proceeded to the merits of the appeal. Noting that the finality requirement is jurisdictional in nature, the Supreme Court held that the lower court was without jurisdiction to hear the appeal and vacated its opinion.

9. We hold that an order granting a motion to disqualify counsel does "resolve an important issue completely separate from the merits of the action." Cf. *North American Acceptance Corp. v. Arnall, Golden & Gregory, supra*, 593 F.2d at 645 n. 5.

on the merits." *Id.* The Court concluded that the appellate court's power to vacate and order a new trial was a "plainly adequate" remedy in the event of an erroneous denial of a disqualification motion.

Merrill Lynch maintains that the *Firestone* rule that disqualification denials are not immediately appealable under § 1291 is equally applicable to disqualification grants. We disagree. First, the Court's statement that "[t]he propriety of the District Court's denial of a disqualification motion will often be difficult to assess until its impact on the underlying litigation may be evaluated, which is normally only after final judgment," *Firestone Tire & Rubber Co. v. Risjord, supra* at ——, 101 S.Ct. at 675, 66 L.Ed.2d at 580, does not hold true with respect to disqualification grants. When a district court grants disqualification, the effect of the court's action is immediate and measurable. The party opposing the motion is abruptly deprived of his counsel, and, provided he desires to proceed with his action, the litigation is disrupted while he secures new counsel. In this situation, the reviewing court need not wait until final judgment to evaluate the impact of the lower court's order.

In addition, the appellate court's power to vacate the judgment appealed from and order a new trial would seldom provide any solace to the party erroneously deprived of his chosen counsel. As the Second Circuit recently observed, "[i]f the order [granting disqualification] is erroneous, correcting it by an appeal at the end of the case might well require a party to show that he lost the case because he was improperly forced to change counsel. This would appear to be an almost insurmountable burden." *Armstrong v. McAlpin*, 625 F.2d 433, 440–41 (2d Cir. 1980), *vacated on other grounds*, —— U.S. ——, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981). Furthermore, if the party who suffers the erroneous grant of a disqualification motion prevails in the action, the disqualified counsel is not likely to find any remedy for the damage to his reputation or to his pocketbook. Thus, unlike the situation in *Firestone*, the harm caused by postponing review of an order granting disqual-

ification of counsel would in most instances be irreparable.

We conclude that an order granting a motion to disqualify counsel is, as a practical matter, "effectively unreviewable" on appeal from a final judgment on the merits. Such an order, therefore, falls within the narrow exception to the final judgment rule announced in *Cohen* and subsequent cases. Finding that we have jurisdiction to hear this appeal, we now proceed to a consideration of the merits of Duncan's claim.

### III.

#### A. *Canon 4*

Whenever an attorney seeks to represent an interest adverse to that of a former client, the possibility arises that the attorney, whether intentionally or inadvertently, will reveal to his present client confidential information entrusted to him during his previous representation. Disclosure of such confidential information runs afoul of the attorney's ethical obligation to "preserve the confidences and secrets of a client," ABA Code, Canon 4, and threatens the very foundation of the attorney-client relationship. Should a court determine that the sanctity of information previously given in confidence is indeed in jeopardy, it will disqualify the attorney from opposing his former client. The justifications for imposing such a drastic remedy are clear. First, it would be grossly unfair to permit an attorney to reveal confidences of his former client to the client's adversary. Second, the policy of encouraging communication between client and attorney would be frustrated if the public perceived that attorneys were free to divulge information previously given in confidence. Further, the integrity of the judicial system would be sullied if courts tolerated such abuses by those who profess and owe undivided loyalty to their clients.

Although rigidly enforcing the ethical obligation of confidentiality, the courts have seen no need to fashion a rule that prevents an attorney from ever repre-

senting an interest adverse to that of a former client. Thus, to disqualify his former counsel, the moving party must prove not only the existence of prior attorney-client relationship but also that there is a genuine threat that confidences revealed to his former counsel will be divulged to his present adversary. The party seeking disqualification is not required, however, to point to specific confidences revealed to his former attorney that are relevant to the pending case. Instead, he "need only to show that the matters embraced within the pending suit are *substantially related* to the matters or cause of action wherein the attorney previously represented him." *Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 252 (5th Cir. 1977); *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 89 (5th Cir. 1976); *T. C. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265, 268 (S.D.N.Y.1953). Once the former client proves that the subject matters of the present and prior representations are "substantially related," the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation. *Id.*

■ We find that the district court, though purporting to apply the substantial relationship test, strayed from the legal principles announced in our disqualification cases. As we have indicated, the party seeking disqualification of his former counsel must bear the burden of proving that the present and prior representations are substantially related. In this case the district court appears to have relieved Merrill Lynch of this burden. In discussing the substantial relationship test, the court quoted from the Seventh Circuit's opinion in *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221 (7th Cir. 1978):

> [O]nly where it is clearly discernible 'that the issues involved in a current case *do not relate* to matters in which the attorney formerly represented the adverse

party will the attorney's present representation be treated as measuring up to the standard of legal ethics.'

*Id.* at 224 (emphasis added). On the basis of this authority, the district court concluded "that the court cannot clearly discern that the issues in this case are *unrelated* to those previous matters." Emphasis added. In addition, the court stated that "[a]lthough the previous cases may not involve the identical issues involved here, the court feels that Smathers & Thompson would certainly have been exposed to information which would be substantially related to the instant case."

These statements, and others in a similar vein, evidence a misunderstanding of the applicable legal principles. Instead of requiring Merrill Lynch to prove that the present and former representations were substantially related, the court assigned Duncan the task of proving that the two representations were *not* substantially related. The court not only removed the burden of proof from Merrill Lynch but saddled Duncan with the burden of proving a negative. This interpretation of *Westinghouse* simply does not accord with the Fifth Circuit rule on where the burden of proof lies in a disqualification proceeding. We, therefore, have no course but to remand to the district court with instructions that it apply the legal principles announced in this opinion.

■ Furthermore, even if the district court had properly allocated the burden of proof, we find that this record presents insufficient evidence to establish the requisite "substantial relationship." In support of its motion to disqualify, Merrill Lynch listed ten matters in which Smathers & Thompson had represented it but said nothing about the specific nature of these cases.[10] Instead Merrill Lynch stated generally that these matters involved various kinds of securities, margin accounts, Merrill

---

10. Merrill Lynch did make some additional comments about two of these cases. As we discuss below, however, these comments offered little beyond the general statement made

with respect to all ten of the matters comprising Smathers & Thompson's previous representation of Merrill Lynch.

Lynch's relationship with its customers and employees, and the federal and state securities laws. In addition, Merrill Lynch stated that in performing its work Smathers & Thompson had reviewed Merrill Lynch's records, held conferences with its officers and employees, and had prepared a range of legal documents on behalf of its client. Duncan has not claimed, and considering the nature of a securities practice probably could never claim, that its representation of Merrill Lynch did not involve such matters. However, Duncan argues, and we agree, that a catalogue of such generalities offers little assistance to a court attempting to ferret out the degree of similarity, if any, between the former representation and the pending case.

In a disqualification case, the focus of the district court's inquiry should be on the precise nature of the relationship between the present and former representations. As this court recently observed " '[w]hen dealing with ethical principles, ... we cannot paint with broad strokes. The lines are fine and must be so marked.... [T]he conclusion in a particular case can be reached only after painstaking analysis of the facts and precise application of precedent.' " *Brennan's, Inc. v. Brennan's Restaurants, Inc.,* supra, 590 F.2d at 173–74 (quoting *United States v. Standard Oil Co.,* 136 F.Supp. 345, 367 (S.D.N.Y.1955). Merely stating that the previous representation involved securities work, conferences with Merrill Lynch employees, and the preparation of various legal documents provides the district court with no opportunity to engage in a "painstaking analysis of the facts." The statements offered by Merrill Lynch, and accepted by the district court as evidence of a substantial relationship, could be applied to virtually any law firm that had ever represented Merrill Lynch or any large brokerage firm. However, the fact that Smathers & Thompson used to represent Merrill Lynch, even on a variety of matters and over a relatively long period of time, is alone insufficient to establish the required nexus with the present case. "The rule of disqualification is not mechanically applied in this Circuit." *Church of Scientology v.*

*McLean,* 615 F.2d 691, 693 (5th Cir. 1980). Only when the moving party delineates with specificity the subject matters, issues, and causes of action presented in former representation can the district court determine if the substantial relationship test has been met. Merely pointing to a superficial resemblance between the present and prior representations will not substitute for the careful comparison demanded by our cases. In sum, we find that Merrill Lynch failed to provide the district court with sufficient information to enable it to measure the substantiality of the relationship between Duncan's suit and the prior matters wherein Smathers & Thompson represented Merrill Lynch.

In reaching our conclusion, we are mindful that in its memorandum Merrill Lynch did offer some further discussion of two of the ten matters listed in the affidavit, and that Merrill Lynch did identify one other case that supposedly involved issues "remarkably similar" to those presented in Duncan's suit. We find, however, that Merrill Lynch's discussion of these cases falls short of establishing a substantial relationship with the pending suit. The first case, *Alderson v. Citrus Associates,* arose from the events following a suspension of orange juice futures contracts on the New York Cotton Exchange as a result of price controls imposed by the Nixon administration. Alderson, who had maintained a margin account with Merrill Lynch, sued its broker alleging violations of federal and state securities laws. Merrill Lynch stated that, in handling this case, Smathers & Thompson "was in frequent communication with Merrill Lynch for the purpose of developing the necessary information and documentation ... with regard to Merrill Lynch procedures for handling margin accounts." In the second case, *Merrill Lynch, Pierce, Fenner & Smith v. Byrne,* a Merrill Lynch customer charged that Merrill Lynch had mishandled the customer's stop-order in violation of the Florida securities laws and in violation of its duties under the common law of fraud, negligence, and contract. Merrill Lynch stated that Smathers &

Thompson's representation in this case included pre-trial discovery, motion practice, and an appeal to the Florida Supreme Court.

It is apparent that Merrill Lynch's comments regarding these cases are essentially a paraphrase of the general observations made about all ten of the cases comprising Smathers & Thompson's former representation of Merrill Lynch. For example, Merrill Lynch again points out that these cases involved causes of action arising under federal and state securities laws, but it makes no attempt to describe the precise issues involved in those cases or to relate those issues to the questions raised in Duncan's suit. Similarly, Merrill Lynch states that *Alderson* pertained to "Merrill Lynch procedures for handling margin accounts," but it does not explain how the margin account question raised in that case relates to the margin account question presented in the present case. The discussion of these cases, therefore, contains the same flaw as before: Merrill Lynch has described only a general, superficial connection between the subject matters of these cases and that of Duncan's suit. Again, we are left to guess the precise nature of the relationship between the pending and former representation. A more careful comparison is required, however, before disqualification will be granted.

Merrill Lynch also claims that a substantial relationship is demonstrated by the facts and issues presented in *McCormick v. Esposito*, 500 F.2d 620 (5th Cir. 1974) *cert. denied*, 420 U.S. 912, 95 S.Ct. 834, 42 L.Ed.2d 842 (1975).[11] In that case McCormick filed suit against the securities brokerage firm of Goodbody & Co. alleging violations of Regulation T and of the New York Stock Exchange Rules relating to maintenance margin requirements. In particular, McCormick alleged that Goodbody & Co. had utilized "buying power" generated in his Special Miscellaneous Account to make extensions of credit not permitted by Regulation T, a claim that closely resembles an allegation raised in Duncan's complaint. Merrill Lynch points out that Goodbody & Co. was acquired by a wholly owned subsidiary of Merrill Lynch in December 1970, some six months before McCormick brought this action. Merrill Lynch retained Smathers & Thompson to represent Goodbody & Co. in *McCormick*, and, according to Merrill Lynch, its attorneys directed and approved the actions taken by Smathers & Thompson during this litigation. Merrill Lynch was not a party to this action, however.

While we agree that there are important similarities between the subject matters of *McCormick* and the present suit, we cannot accept Merrill Lynch's argument that, with *McCormick*, it has met its burden of proving a substantial relationship. Merrill Lynch is correct that McCormick did not bring his action until after Goodbody & Co. had been acquired by a Merrill Lynch subsidiary. Merrill Lynch neglects to note, however, that McCormick's suit pertained to acts and events that occurred in 1968 and 1969, *more than a year before Merrill Lynch or its subsidiary had any connection with Goodbody & Co.* The allegations of McCormick's complaint, therefore, had nothing whatsoever to do with Merrill Lynch or its subsidiary and, consequently, gave Merrill Lynch no occasion to reveal any secrets or confidences other than those relating to Goodbody & Co. during the years 1968 and 1969. Under these circumstances, it is simply not reasonable to irrebuttably presume that Smathers & Thompson, though employed by Merrill Lynch, had access to Merrill Lynch's confidences and secrets. Although defending the *McCormick* action required Smathers & Thompson to familiarize itself with Goodbody & Co.'s procedures relating to Special Miscellaneous Accounts and margin accounts, the firm had no reason, and probably no opportunity, to acquire any information about Merrill Lynch. Of course, it is possible that, by some unusual

11. In the affidavit accompanying the disqualification motion, the extended discussion of the factual background of the *McCormick* case stands in sharp relief to the generalities offered with respect to the ten matters comprising Smathers & Thompson's former representation of Merrill Lynch.

circumstance, Smathers & Thompson did have access to information other than that necessary to its defense of Goodbody & Co. We conclude, however, that Merrill Lynch is not entitled to a conclusive presumption on this question but must present evidence that Smathers & Thompson had access to other information and that such information is relevant to the issues raised in the pending case.

Finally, we find distinguishable two cases heavily relied upon by Merrill Lynch. First, Merrill Lynch cites *Westinghouse Elec. Corp. v. Gulf Oil Corp., supra,* 588 F.2d at 224, for the proposition that the substantial relationship test "does not necessarily involve any inquiry into the imponderables involved in the degree of the relationship between the two matters but instead involves a realistic appraisal of the possibility that confidences had been disclosed in one matter which will be harmful to the client in the other." While we do not necessarily disagree with the Seventh Circuit's language on this point, we fail to see how it aids Merrill Lynch's position in the present case.

In *Westinghouse,* Westinghouse brought an antitrust action against United Nuclear Corp. (UNC) and Gulf Oil Corp. (Gulf) alleging that defendants and others had fixed the price of uranium. After suit was filed, Gulf sought to disqualify the law firm representing UNC on the ground that the firm had previously represented Gulf on matters substantially related to the pending suit. Gulf established that during a five year period of representation the firm had handled numerous real estate transactions relating to Gulf uranium properties. Realizing that the subject matters of real estate transactions and the litigation surrounding an alleged price-fixing conspiracy were facially dissimilar, Gulf went on to delineate the types of confidential information that it had entrusted to its former counsel, viz., information relating to the quantity and quality of its uranium reserves and to its reasons for delaying production of those reserves. The court of appeals, reversing the trial court, held that Gulf had proven that the subject matters of the pending and prior representations were substantially related.

■ We find that both the result and the analysis used in *Westinghouse* are consistent with our interpretation of the substantial relationship test. As we have indicated in ruling on a disqualification motion a court must look behind mere facial similarities or dissimilarities between the prior and pending cases and focus on the precise nature of the subject matters presented in the two representations. In *Westinghouse* Gulf enabled the court to make this comparison by specifying the kinds of confidential information that it had revealed to its former counsel and by describing how that information related to the matters raised in the *Westinghouse* suit. Gulf's detailed description of the scope of the prior legal representation stands in sharp contrast to the generalities offered by Merrill Lynch in the present case. In short, although Merrill Lynch has repeatedly asserted that the present and former representations are substantially related, it has demonstrated no more than a surface and superficial connection between the matters. Citing *Westinghouse* does not help Merrill Lynch but merely illustrates what Merrill Lynch should have done but did not do.

Merrill Lynch next cites *Fund of Funds, Ltd. v. Arthur Anderson & Co.,* 567 F.2d 225, 236 (2d Cir. 1977), for the proposition that because Smathers & Thompson was privy to Merrill Lynch's internal "practices and procedures," it should be disqualified from opposing its former client in this action or, apparently, in any future action. In that case a law firm representing Fund of Funds was disqualified from suing Arthur Anderson because the firm was determined to be merely an "extension" of the law firm that had been general counsel to Anderson for some 15 years and that had specific knowledge of the practices and procedures that were the subject of Fund of Funds' suit. There are important differences between *Fund of Funds* and the present suit, however. There, the question was not whether Anderson's counsel, Mor-

gan Lewis & Bockius, had knowledge of its practices and procedures but whether another firm, alleged to be Morgan Lewis' "understudy," had access to that knowledge. There is no evidence that Morgan Lewis ever seriously argued that *it* did not possess such relevant confidential information. Even if it had made this argument, the facts were clear not only that Morgan Lewis had a longstanding and intimate knowledge of every facet of Anderson's business, but also that Morgan Lewis had actually sorted out documents that suggested Anderson's liability to the plaintiff.

In the present case, of course, Smathers & Thompson has denied that it possesses any confidential information relevant to Duncan's action, and it has presented evidence in support of its claim. First, Smathers & Thompson points out that, unlike Morgan Lewis, it has never been general counsel to its former client but instead has represented Merrill Lynch in a limited number of local matters and only for the duration of each matter. Thus, it has not had the same pervasive, day-to-day relationship with its client that was present in *Fund of Funds*. Second, although Smathers & Thompson concedes that it learned confidential information while representing Merrill Lynch, it argues that these confidences pertained only to the matters then at hand. Finally, Smathers & Thompson maintains that Merrill Lynch has failed to establish that any of these matters are substantially related to the instant case. These arguments are convincing. Merrill Lynch cannot have Smathers & Thompson disqualified simply by stating that the firm has knowledge of Merrill Lynch's "practices and procedures." Instead, it must prove that Smathers & Thompson has knowledge of the particular practices and procedures which are the subject matter of Duncan's suit. It can do this either by establishing that the present and previous representations are substantially related or by pointing to specific instances where it revealed relevant confidential information regarding its practices and procedures. Merrill Lynch has failed to do either.

We hold that, on this record, Merrill Lynch has failed to demonstrate the requisite similarity between the prior representations and the present suit. Until it does so, Merrill Lynch is not entitled to the inference that Smathers & Thompson possesses confidential information that is relevant to Duncan's action.

## B. *Canon 9*

In the disqualification motion filed with the district court, Merrill Lynch argued that Smathers & Thompson's representation of Duncan was also barred by the proscription that "[a] lawyer should avoid even the appearance of impropriety." Canon 9, ABA Code. The district court, however, gave no discussion of Canon 9 in its disqualification order, other than stating that "the court is mindful of Canon 9 which prohibits even the appearance of impropriety." This statement provides us with no basis for determining whether or for what reason the court felt that Smathers & Thompson's representation of Duncan was prohibited by Canon 9.

In its brief Merrill Lynch refers to this Circuit's two-part test for determining when an attorney should be disqualified for an appearance of impropriety: (1) the trial court must find some "specifically identifiable appearance of improper conduct" and (2) the court must "find that the likelihood of public suspicion or obloquy outweighs the social interest which will be served by a lawyer's continued participation in a particular case." *Woods v. Covington County Bank*, 537 F.2d 804, 812 & 813 n. 12 (5th Cir. 1976). Merrill Lynch then argues that this test is met here for two reasons. First, it argues an actual impropriety resulted when Smathers & Thompson violated Canon 4 by taking a case against Merrill Lynch which was substantially related to the firm's former representation of Merrill Lynch. We have held, however, that Merrill Lynch has yet to establish a violation of Canon 4 in this case. Because no impropriety has been proved, a Canon 9 violation cannot be premised on this ground. Second, Merrill Lynch asserts that an appearance of impro-

priety was created when, in 1977, Smathers & Thompson sought to represent Sami and Matilde Behar in their suit against Merrill Lynch at the same time the firm was still representing Merrill Lynch. As we discussed in footnote[12] above, however, the *Behar* matter has nothing to do with the present suit, and, furthermore, any appearance of impropriety presented by the case was purged when Smathers & Thompson withdrew as counsel for the Behars. Thus, neither of the grounds listed by Merrill Lynch in its brief meets even the first prong of the *Woods* test.

### IV.

We conclude that the district court erred in disqualifying Smathers & Thompson from representing Duncan in his action against Merrill Lynch. On remand, the court should, in accordance with the principles we have outlined, require Merrill Lynch to bear the burden of proving that Smathers & Thompson's current representation of Duncan is substantially related to the firm's former representation of Merrill Lynch. In applying the substantial relationship test, the court should require Merrill Lynch to delineate with greater specificity the scope of the prior representation and to demonstrate precisely how the subject matters of the prior representation are connected with the matters embraced within the pending suit. Should the court then determine that disqualification is warranted, it should enter detailed findings of fact which set forth the bases for its conclusion.

We vacate the district court's order and remand for further proceedings.

VACATED and REMANDED.

12. *See* note 3 *supra.* Merrill Lynch argued below that two members of Smathers & Thompson had accounts with Merrill Lynch and therefore would be members of the purported class. Smathers & Thompson denied that any of its members would be class members. In *Zylstra v. Safeway Stores, supra,* 578 F.2d at 104, this court held that "attorneys ... who themselves are members of the class of plaintiffs should be subject to a per se rule of disqualification under Canon 9 and should not be permitted to serve as counsel for the class."

*Zylstra* cannot be applied at this point because the district court has made no factual determination as to whether Smathers & Thompson attorneys are indeed members of the class. Furthermore, because the court granted Merrill Lynch's motion to stay the action until its motion to disqualify was determined, the court has yet to give any consideration to the class certification question. Of course, *Zylstra* would not prevent Smathers & Thompson from representing Duncan in his individual action.