**SATELLITE FINANCIAL PLANNING CORPORATION, et al., Plaintiffs,**

v.

**FIRST NATIONAL BANK OF WILMINGTON, et al., Defendants.**

Civ. A. No. 85–463 CMW.

United States District Court, D. Delaware.

Jan. 30, 1987.

See also, 646 F.Supp. 118.

James F. Harker, of Herlihy & Wier, Wilmington, Del., (Robert W. Steele, Roger C. Simmons, James R. Myers, and W. James McKay, of Steele, Simmons & Fornaciari, Washington, D.C.; and William F. Jones, of Jones & Mack, Annapolis, Md., and Edward J. Glusing, Jr., of Baltimore, Md., of counsel), for plaintiffs.

Walter L. Pepperman, II, William H. Sudell, Jr., and David A. Jenkins, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant First Nat. Bank of Wilmington.

E. Norman Veasey, and Robert W. Whetzel, of Richards, Layton & Finger, Wilmington, Del. (James R. Eyler, Jefferson V. Wright, and J. Steven Lovejoy, of Miles & Stockbridge, Baltimore, Md., of counsel), for defendants, Commercial Credit Corp. and Control Data Corp.

CALEB M. WRIGHT, Senior District Judge.

In this increasingly contentious litigation, plaintiffs and proposed third party defendant moved to disqualify the counsel for defendant First National Bank of Wilmington, Delaware.[1] First National is represented by Morris, Nichols, Arsht & Tunnell ("M.N.A. & T."). Walter Tuthill, a partner in M.N.A. & T. served as Delaware counsel for the Delaware incorporation of Satellite-Delaware in 1983. When defendants moved to join Satellite-Delaware as a third party defendant,[2] plaintiffs moved to disqualify M.N.A. & T.

BACKGROUND

This litigation arises from an Operating Agreement and letter agreement executed between Satellite-Delaware and First National on September 1, 1983. Satellite-Delaware's rights and obligations were assigned to Satellite-Maryland on November 1, 1983. The purpose of the agreements was to set up a system for providing credit to consumer purchasers of television reception only satellites. First National would provide the credit to individuals seeking to purchase satellites. Satellite-Delaware would provide consumers asking for the credit. These consumers would be purchasers of satellites from one of the retailers in Satellite-Delaware's "network" of retailers. In exchange for each loan issued, Satellite-Delaware—and subsequently Satellite-Maryland—would receive a commission.

Plaintiffs filed suit against First National and the other defendants on May 7, 1985, alleging violations of state and federal law. On July 2, 1985, First National counterclaimed against the original plaintiffs. On August 26, 1986, the defendants filed the motion to add new parties which led to this motion to disqualify.[3]

DISCUSSION

The appropriate standard in ruling on a motion to disqualify counsel based upon prior representation of a present adversary is the "substantial relationship" test.[4] *Westinghouse Electric Corp. v.*

---

1. Plaintiffs in this action are Satellite Financial Planning Corporation-Maryland ("Satellite-Maryland"), and Satellite Earth Station Protection Company ("Earth Station"). Proposed third party defendants are Satellite Financial Planning Corporation-Delaware ("Satellite-Delaware"), and Security Associates Agency Insurance Corporation. The defendants are the First National Bank of Wilmington, Delaware ("First National"), Commercial Credit Corporation and Control Data Corporation.

2. This was part of defendants' motion to amend their counterclaim, add new counterclaims, and add new parties. The Court stayed resolution of that motion pending determination of this motion to disqualify.

3. More detailed statements of the factual and legal aspects of this lawsuit are enumerated in this Court's earlier opinions concerning the merits of plaintiffs' claims. *See Satellite Financial Planning v. First National Bank,* 633 F.Supp. 386 (D.Del.1986) and 643 F.Supp. 449 (D.Del. 1986).

4. Under the Delaware Lawyers' Rules of Professional Conduct, no member of a law firm can represent a client that any member of the firm would be prohibited from representing. Rule

*Gulf Oil Corp.,* 588 F.2d 221, 223 (7th Cir.1978); *American Roller Company v. Budinger,* 513 F.2d 982, 984 (3d Cir.1975); *Richardson v. Hamilton International Corporation,* 469 F.2d 1382, 1385 (3d Cir. 1972). Disqualification is appropriate when the subject matter of the new litigation is substantially related to the subject matter of the past representation. *See also* D.L. R.P.C. Rule 1.9. The underlying purpose for the rule is to ensure that a client's confidential communications to his lawyer are not used against that client when his lawyer later represents a party adverse to the former client. *See, e.g., INA Underwriters v. Nalibotsky,* 594 F.Supp. 1199, 1206 (E.D.Pa.1984); *Realco Service, Inc. v. Holt,* 479 F.Supp. 867, 871 (E.D.Pa.1979).

■ Despite this strong policy rationale, the rule prohibiting representation of a new client against a former client is not a per se rule. Instead, a court should undertake a "painstaking analysis of the facts" and evaluate applicable precedent before disqualifying counsel. *Duncan v. Merrill Lynch, Pierce, Fenner & Smith,* 646 F.2d 1020, 1029 (5th Cir.1981), *cert. denied,* 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981). Only if the moving party proves the requisite substantial relationship should a lawyer be disqualified. A movant for disqualification must have evidence to buttress his claim of conflict because a litigant should, as much as possible, be able to use the counsel of his choice. *Laker Airways Ltd. v. Pan American World Airways,* 103 F.R.D. 22, 27 (D.D.C.1984). Also, because disqualification motions have increasingly been used as one weapon in the litigation arsenal, courts now approach such motions with "cautious scrutiny." *Id.* at 28.

■ In proving that prior representation is substantially related to present litigation, the moving party is not required to divulge the confidences actually communicated.

*Westinghouse Electric Corp. v. Gulf Oil Corp.,* 588 F.2d 221 (7th Cir.1978). The Court instead should undertake "a realistic appraisal of the possibility that confidences had been disclosed in the one matter which will be harmful to the client in the other." *Id.* at 224; *Analytica,* 708 F.2d at 1269 (allowing evidence of the actual communications would compromise the confidentiality of the prior communications).

■ The Court must answer three questions to determine whether movants have satisfied the substantial relationship test:

1. What is the nature and scope of the prior representation at issue?

2. What is the nature of the present lawsuit against the former client?

3. In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation? *INA Underwriters,* 594 F.Supp. at 1206. The burden of proving that there is a substantial relationship falls upon the moving party. *Id.* at 1207.

The scope of M.N.A. & T.'s prior representation of Satellite-Delaware was as the Delaware firm that incorporated Satellite-Delaware. Tuthill prepared a certificate of incorporation, consent of incorporation with attached by-laws, and a consent of directors. Delaware Corporation Organizers, Inc. ("DCO"), a company wholly owned by M.N.A. & T., was appointed the registered agent for Satellite-Delaware. As registered agent for Satellite-Delaware, DCO received annual franchise tax reports and statements of tax due, which were routinely forwarded to Satellite-Delaware. DCO's status as Satellite-Delaware's registered agent terminated on the date Satellite-Del-

---

1.10. *See e.g., Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263, 1266 (7th Cir.1983). If Tuthill's representation of Satellite-Delaware is substantially related to the present litigation, then the entire firm of M.N.A. & T. should be disqualified. This case does not involve a situation where an attorney changes jobs and creates a conflict within the new firm. *See Analytica,* 708 F.2d at 1267.

aware's corporate status was voided for failure to pay the franchise tax.[5]

Movants have not provided any facts to indicate that the incorporation was other than a routine one. There is nothing in the record to indicate that Tuthill performed any advisory role to Satellite-Delaware or that he needed any information other than what is now in the incorporation documents. Also, M.N.A. & T.'s continued monitoring of Satellite-Delaware appears to have been nothing more than the transmission of tax assessments from the State of Delaware to Satellite-Delaware. The scope of the prior representation is a discrete one: M.N.A. & T. performed the ministerial tasks necessary to incorporate Satellite-Delaware in Delaware.

The nature of the present lawsuit against the former client is much more complex. The counterclaim alleges counts of fraud, breaches of express and implied contract, tortious interference with prospective and existing business relations, and punitive damages. The core facts for these claims concern the representations William Young made at the time the agreements were signed and actions Young and his companies took while the agreements were in effect.[6] There is nothing in the counterclaim, however, that alleges a failure to fulfill the corporate purpose Tuthill drafted.

■■■ The third prong of the substantial relationship inquiry links the prior and present representations by determining whether facts relevant to the present litigation might have been disclosed in the prior representation. In determining whether a fact might have been disclosed, the Court should consider whether a client and lawyer ought to have discussed the relevant facts or whether it would not have been unusual for the lawyer and client to have discussed the relevant facts. *Realco Services, Inc. v. Holt*, 479 F.Supp. 867, 871–872 (E.D.Pa.1979). Tuthill needed nothing more than what was actually in the incorporation papers to file those documents. The fact that the corporate purpose for Satellite-Delaware is somewhat specific does not mean that the company ought to have communicated more information to Mr. Tuthill than what was stated in the incorporation documents.[7] Moreover, given the discrete nature of Tuthill's service to Satellite-Delaware and that Satellite-Delaware proved to be nothing more than a Delaware-based shell for Satellite-Maryland, it would have been unusual for any confidential communications relevant to the instant lawsuit to have been communicated to Tuthill. This is especially true given that the provision on which plaintiffs most rely, the statement of corporate purpose, is virtually identical to the corporate purpose of Satellite-Maryland. Satellite-Maryland was incorporated two days prior to Satellite-Delaware. The most logical conclusion from this is that all Maryland counsel needed to communicate to Tuthill was the information actually needed to complete the incorporation documents.

When resolving this third question, "the court should not allow its imagination to run free with a view to hypothesizing conceivable but unlikely situations in which confidential information 'might' have been disclosed which would be relevant to the present suit." *INA Underwriters*, 594 F.Supp. at 1206. In order to find that relevant confidential information might have been communicated in the instant case, this Court would be forced to hypothesize such an unlikely situation. In short,

---

5. Both movants and First National state that Tuthill's representation of Satellite-Delaware was as the attorney who incorporated the company in Delaware.

6. William Young is the principal for all plaintiff and third-party defendant companies.

7. The corporate purpose for Satellite-Delaware reads as follows: "The purpose of the corporation is to act as a broker of loans for sales of satellite and related equipment; to act as an agent for the sale of life, health, and other insurance to be issued in connection with the satellite sales and lending industries; and, in addition to the foregoing, to engage in any lawful act or activity for which corporations may be organized under the Delaware General Corporation Law."

Tuthill's role in incorporating Satellite-Delaware and in establishing DCO as the registered agent is not substantially related to the present litigation against Satellite-Delaware.

Other courts have denied disqualification motions in situations where the prior representation was more significant than that present here. In *Duncan, supra,* the court reversed the district court's disqualification order, despite the fact that plaintiff's attorney had represented the defendant ten times over a ten year period. The Fifth Circuit's opinion stated that the mere facial similarity between prior and present representation is insufficient to justify disqualification. Instead, "the focus of the district court's inquiry should be on the precise nature of the relationship between the present and former representation ... Merely pointing to a superficial resemblance between the present and prior representation will not substitute for the careful comparison demanded by our cases." *Id.* at 1029. The attorney's prior work for Merrill Lynch in *Duncan* included reviewing Merrill Lynch's records, holding conferences with its officers and employees, and preparing a range of legal documents. The range of services performed by the attorney in *Duncan* were greater than those performed by Tuthill and those services bore a superficial resemblance to the current litigation; yet, the court held that a more direct relationship had to be shown.

The same result is found in cases where the prior representation was in an advisory capacity rather than in a litigation capacity. *See, e.g., Laker,* 103 F.R.D. at 39 (prior representation consisting of general anti-trust advice insufficient to disqualify counsel in particular anti-trust action); *CITC Industries, Inc. v. Manow International Corp.,* 1978–1 Trade Cases (CCH) ¶ 61,947 (prior representation including patent application work not substantially related to suit claiming invalidity of a different patent); *Emm Ess Metals Co., Inc. v. Triumph Alloys International, Inc.,* 1979–1 Trade Cases (CCH) ¶ 62,680 ("This Court knows of no authority for a per se rule that a firm which has served as general counsel

to a client is barred from representing clients in an adversary proceeding against the former client."). More facts of a relationship are needed than a simple statement of prior work done in a superficially similar area. Movants have failed to provide such facts to this Court. The fact that the incorporation took place during the same time frame that the agreements were negotiated in is nothing more than a superficial similarity; there is nothing to indicate that Tuthill performed any service for Satellite-Delaware with respect to its negotiations with First National.

The facts here are thus significantly different from those in *United States Football League v. National Football League,* 605 F.Supp. 1448 (S.D.N.Y.1985). The law firm in that case played a substantial role in the start-up phase of the football league. That role went well beyond drafting of basic corporate documents. The background legal work performed in *United States Football League* was significant; movants have offered no evidence of similar background efforts by Tuthill.

CONCLUSION

When an attorney represents an adversary of a former client, it is vital that there not be a substantial relationship between the present and prior representations. Yet, it is also true that representing a client in one matter should not forever bar an attorney from representing an adversary of the former client. In each case, a court should look at the facts of the two representations. Movants in the case at bar have failed to prove that the prior and present representations are substantially related. The motion to disqualify First National's counsel will therefore be denied.

An Order will enter in conformity with this Opinion.