# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN RE OXBOW CARBON LLC      )   Consol. C.A. No. 12447-VCL
UNITHOLDER LITIGATION          )

## MEMORANDUM OPINION

Date Submitted: July 27, 2017
Date Decided: July 28, 2017

Kenneth J. Nachbar, Thomas W. Briggs, Jr., Richard Li, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; R. Robert Popeo, Michael S. Gardener, Breton Leone-Quick, MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C., Boston, Massachusetts; *Attorneys for Oxbow Carbon LLC.*

Stephen B. Brauerman, Sara E. Bussiere, BAYARD, P.A., Wilmington, Delaware; *Special Conflicts Counsel for Oxbow Carbon LLC.*

Stephen C. Norman, Jaclyn C. Levy, Daniyal M. Iqbal, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; David B. Hennes, C. Thomas Brown, Daniel J. Chirlin, ROPES & GRAY LLP, New York, New York; *Attorneys for Oxbow Carbon & Minerals Holdings, Inc., Ingraham Investments LLC, Oxbow Carbon Investment Company LLC, and William I. Koch.*

Patricia R. Urban, PINCKNEY, WEIDINGER, URBAN & JOYCE LLC, Greenville, Delaware; *Special Conflicts Counsel for Oxbow Carbon LLC, Oxbow Carbon & Minerals Holdings, Inc., Ingraham Investments LLC, Oxbow Carbon Investment Company LLC, and William I. Koch.*

Kevin G. Abrams, Michael A. Barlow, J. Peter Shindel, Jr., April M. Ferraro, ABRAMS & BAYLISS LLP, Wilmington, Delaware; Brock E. Czeschin, Matthew D. Perri, Sarah A. Galetta, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Michael B. Carlinsky, Jennifer J. Barrett, Chad Johnson, Sylvia Simson, Silpa Maruri, QUINN EMANUEL URQUHART & SULLIVAN, LLP, New York, New York; *Attorneys for Crestview-Oxbow Acquisition, LLC, Crestview-Oxbow (ERISA) Acquisition, LLC, Crestview Partners, L.P., Crestview Partners GP, L.P., Crestview Advisors, LLC, Robert J. Hurst, and Barry S. Volpert.*

Evan O. Williford, Andrew J. Huber, THE WILLIFORD FIRM LLC, Wilmington, Delaware; *Special Conflicts Counsel for Crestview-Oxbow Acquisition, LLC, Crestview-Oxbow (ERISA) Acquisition, LLC, Crestview Partners, L.P., Crestview Partners GP, L.P., Crestview Advisors, LLC, Robert J. Hurst, and Barry S. Volpert.*

J. Clayton Athey, John G. Day, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware; Dale C. Christensen, Jr., Michael B. Weitman, SEWARD & KISSEL LLP, New York, New York; *Attorneys for Defendant and Counterclaim-Plaintiff Load Line Capital, LLC.*

David C. McBride, Kathaleen St. J. McCormick, Elisabeth S. Bradley, Meryem Y. Dede, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Rusty Hardin, Ryan Higgins, Jeremy Monthy, RUSTY HARDIN & ASSOCIATES, LLP, Houston, Texas; *Attorneys for Defendant Eric P. Johnson.*

David C. McBride, Kathaleen St. J. McCormick, Elisabeth S. Bradley, Meryem Y. Dede, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Michael P. Angelini, Joshua A. Lewin, Lynette Paczkowski, David Travers, BOWDITCH & DEWEY, Boston, Massachusetts; *Attorneys for Defendant Christina Wing O'Donnell.*

**LASTER, Vice Chancellor.**

William I. Koch and his affiliates (collectively, the "Koch Parties") wish to call as a rebuttal witness R. Robert Popeo, an attorney and senior partner with the law firm of Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C. ("Mintz Levin"). Mr. Popeo acted as the Koch Parties' principal counsel during the events giving rise to this litigation and for much of the case. He attended several of the Koch Parties' depositions, including the deposition of Mr. Koch. He was present throughout trial, although he did not handle any witnesses.

Individuals and entities affiliated with the Crestview private equity complex (collectively, "Crestview") have moved for an order precluding Mr. Popeo from testifying. They contend that Mr. Popeo is not really a rebuttal witness, but rather a delayed part of the Koch Parties' case-in-chief. They also argue that Mr. Popeo was not timely identified on the Koch Parties' trial witness list, that he failed to comply with the court's order that trial witnesses be sequestered, and that his testimony violates the witness-as-advocate rule.

As I see it, my task as finder-of-fact is to understand the underlying evidence to the best of my ability, then evaluate and weigh that evidence to make the most accurate factual findings that I can. With that role in mind, I believe the interests of justice are best served by hearing Mr. Popeo's testimony and giving it the weight it is due. The motion for protective order is therefore denied.

## I.    THE ORDER OF PROOF

Crestview argues that the Koch Parties are not calling Mr. Popeo as a rebuttal witness, but rather to support their case-in-chief. The order of proof that the parties

followed during trial undercuts this argument. The subjects on which the Koch Parties propose to question Mr. Popeo warrant viewing him as a legitimate rebuttal witness.

The general procedure in a trial is for the side having the burden of proof to introduce all of the evidence it relies on in support of its affirmative case, then for the opposing side to introduce all of the evidence it relies on in denying the affirmative case, and then for the party with the burden of proof to have an opportunity to introduce evidence limited to rebutting the evidence of the opposing side.[1] Rebuttal evidence is generally defined as evidence that explains, repels, counteracts, or disproves testimony or facts introduced by the adverse party.[2] But purity of effect is not required. The fact that rebuttal evidence also tends to corroborate the party's affirmative case does not require its exclusion.[3]

A trial court has discretion to modify the general order of proof.[4] Delaware Rule of Evidence 611(a) states: "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue

---

[1] *See Herhal v. State*, 283 A.2d 482, 485 (Del. 1971); *Gaston v. State*, 234 A.2d 324, 325 (Del. 1967).

[2] *See* David L. Finger & Louis J. Finger, *Delaware Trial Handbook* § 8.1 (1994 & Supp.).

[3] *See id.*

[4] *See Taylor v. State*, 298 A.2d 332, 337 (Del. 1972); *Gaston*, 234 A.2d at 325.

embarrassment."[5] "It is well-settled that a trial judge is responsible for management of the trial and is vested with broad discretion to perform that function."[6]

In this case, as in many Court of Chancery cases, the order of proof departed from the norm. Trials in the Court of Chancery are bench trials, and it is often more efficient for a witness to be called only once, rather than for a witness to testify first in one side's case, and then again in the other side's case. During the pretrial conference, the parties agreed that each witness should testify only once, but disagreed on the order of presentation. The Koch Parties made the following proposal:

> [The Koch Parties] have proposed and hereby respectfully submit that any party calling an adverse witness in its case-in-chief should be able to examine that witness first. Counsel for the witness and for any other party may subsequently examine the witness, and such subsequent examinations shall not be limited to the scope of the initial examination of the party who called the adverse witness.[7]

The upshot of this approach is to permit the party who has the burden of proof to determine the order of witnesses by calling adverse witnesses in its case-in-chief. It also enables that party to question an adverse witness from the outset as a hostile witness, using leading questions. Through this method, a skillful advocate can control the initial presentation of the witness's account and elicit negative facts first, before the witness's counsel has the

---

[5] D.R.E. 611(a).

[6] *Christiana Care Health Servs., Inc. v. Crist*, 956 A.2d 622, 625-26 (Del. 2008) (quoting *Czech v. State*, 945 A.2d 1088, 1095 (Del. 2008)).

[7] Dkt. 1140 at 45.

opportunity to present the witness in a favorable light. This approach can be time-consuming, and the strategy can backfire, but it can be effective.

Crestview made a different proposal:

> [Crestview] ha[s] proposed and hereby respectfully submit[s] that any party calling an adverse witness in their case-in-chief shall first permit the witness's counsel to conduct a direct examination, followed by the cross-examination by the adverse party (which need not be limited to the scope of the direct examination), and re-direct and re-cross, if necessary.[8]

The upshot of this approach is to permit the party who has the burden of proof to determine the order of witnesses by calling adverse witnesses in its case-in-chief, but the party does not have the opportunity to question an adverse witness from the outset as a hostile witness. Instead, the witness's own counsel has the opportunity to present the witness first, after which opposing counsel cross-examines. This approach often results in more efficient use of trial time, but it deprives the party with the burden of proof of a tactic (calling and questioning a hostile witness from the outset) that the party may wish to deploy.

During the pretrial conference, I adopted Crestview's proposal. I explained that my general custom is to follow the Koch Parties' approach and to give the party with the burden of proof the ability both to determine the order of witnesses and to question first if the party wishes to exercise that option. To my mind, both of these tactical opportunities, like the opportunity to present evidence first and to open and close, follow the burden of proof. In this case, however, I explained that both sides had asserted interrelated claims and defenses

---

[8] *Id.*

4

where they each technically bore the burden of proof, and so there was less ability to view one side as having the burden such that they also should receive the tactical advantages that accompany the burden.

As it happened, the first witness called was Robert J. Hurst. Because he was a witness controlled by Crestview, the case began with his counsel presenting his direct testimony. After that, the Koch Parties cross-examined Mr. Hurst without any limitation on the scope of their examination. The next witness was Barry Volpert. Because he was a witness controlled by Crestview, his testimony followed the same pattern. The third witness was Mr. Koch, and the Koch Parties questioned him first. Crestview then questioned Mr. Koch without any limitation on the scope of its examination. Although this approach resulted in the efficient use of trial time, it makes it difficult now to parse finely whether the testimony elicited from each witness formed part of one side's affirmative case, was responsive to the other side's efforts to defeat that affirmative case, formed part of the other side's affirmative case, or was responsive to the original side's efforts to defeat the other side's affirmative case.

The resulting ambiguity undercuts Crestview's contention that Mr. Koch is not a proper rebuttal witness. If the parties had followed a traditional order of proof, that formalistic argument would be easier to advance and evaluate. Instead, the parties agreed that each witness only would testify once, and I adopted Crestview's proposal to have the witness's lawyer question the witness first. Having followed a different, less formal sequencing, there is less reason now to invoke formalism to preclude Mr. Popeo from testifying.

Examining the topics on which the Koch Parties propos to question Mr. Popeo suggests that he is an appropriate rebuttal witness. The Koch Parties propose to cover (i) the advice that Mintz Levin gave to Oxbow Carbon LLC and its officers, employees, or directors concerning Crestview's rights under Oxbow's operating agreement and (ii) internal analyses of Mintz Levin that culminated in that advice. The Koch Parties have taken the position throughout this case that the subjective understandings of the parties and the advice that Oxbow's lawyers gave is irrelevant to this dispute, which should be controlled exclusively by the plain meaning of the operating agreement. It is Crestview who relies heavily on the subjective understandings of the parties and the advice that Oxbow's lawyers gave, both to support its argument for breach of the implied covenant of good faith and fair dealing and to argue that the relevant provisions are ambiguous. In my view, these issues are more readily viewed as part of Crestview's case-in-chief and hence areas that the Koch Parties can call on Mr. Popeo to rebut.

The same analysis applies to testimony regarding Mr. Popeo's communications with Crestview and with Morgan Stanley and Goldman Sachs. During trial, Crestview sought to use evidence of these communications to bolster its arguments about a shared understanding of the operating agreement that this court should enforce using the implied covenant of good faith and fair dealing. Once again, this is a subject better viewed as part of Crestview's case-in-chief and hence suitable for rebuttal.

For both of these areas, the argument for permitting the Koch Parties to call Mr. Popeo as a rebuttal witness is stronger because the principal documents that Crestview used to question Mr. Koch included Mr. Popeo's notes and other documents that he authored,

presented, or which were created by Mintz Levin attorneys acting under Mr. Popeo's direction. Crestview spent hours at trial questioning Mr. Koch about these documents. Crestview continued using the documents to examine Mr. Koch even when he testified that he had never seen the documents before. By doing so, Crestview opened the door to the Koch Parties calling Mr. Popeo to testify about what the documents meant.

A final area of proposed rebuttal testimony involves any conflicts of interest faced by Mr. Popeo or the Mintz Levin firm. Crestview elicited testimony about conflicts of interest in an effort to undermine the credibility of Mintz Levin and Mr. Popeo. With Crestview having raised these issues, it seems fair that Mr. Popeo should be permitted to respond.

It is true, as Crestview points out, that the Koch Parties elicited some testimony from Mr. Koch about each of these subjects, but in the main, these were areas that Crestview covered as part of issues best viewed as belonging to its case-in-chief. It is also true that the Koch Parties doubtless anticipated that Crestview would use some of these documents. But in my view, given the scope of the questioning by Crestview and the nature of the issues covered, the Koch Parties did not have an obligation to act preemptively and call Mr. Popeo to explain all of his notes and documents in advance. There are times when a party may wish to bring out points that favor its opponent in an effort to draw the sting, but

that is a tactic, not an obligation. Different facts might call for a different ruling.[9] In this case, permitting the rebuttal testimony will respond to issues best viewed as part of Crestview's case-in-chief.

## II.      ADEQUATE NOTICE

Crestview next contends that the Koch Parties failed to give adequate notice that they would call Mr. Popeo as a rebuttal witness. This argument fails because the Koch Parties explicitly reserved their right to call rebuttal witnesses and identified Mr. Popeo as a potential rebuttal witness on June 20, 2017, twenty calendar days before the first day of trial.

The Koch Parties are correct that trial-by-surprise is to be avoided. "Surprise is not only to be avoided as much as possible, it is a ground for refusing to allow arguably relevant evidence to be used at trial."[10] To minimize the problem of surprise witnesses, Court of Chancery Rule 16(c) provides that, "[e]xcept to the extent that the Court orders otherwise, all pretrial orders shall include . . .[a] list of witnesses, including experts, who will be called by each party at the trial . . . ."[11]

A party's ability to identify rebuttal witnesses is necessarily limited, because it is difficult to know in advance whether and what rebuttal evidence will be required. As is

---

[9] *Compare Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1224 (10th Cir. 2000) (affirming the trial court's ruling precluding rebuttal testimony that the plaintiffs reasonably could have anticipated and addressed in their case-in-chief).

[10] *DiGiacobbe v. Sestak*, 1998 WL 684149, at *7 (Del. Ch. July 7, 1998).

[11] Ct. Ch. R. 16(c).

8

customary, the pretrial order in this case made clear that both sides "reserve[d] the right to . . . call or introduce testimony from any witness(es) necessary for impeachment or rebuttal purposes, whether or not previously identified . . . ."[12]

By email dated June 20, 2017, counsel for the Koch Parties gave Crestview notice that the Koch Parties were reserving their right to call Mr. Popeo as a rebuttal witness. The email stated:

> As you all know, all parties have reserved rights to call rebuttal witnesses.
>
> Depending on the evidence presented by Defendants, and without limitation of the right to call any rebuttal witness Plaintiffs deem appropriate, Plaintiffs specifically reserve the right to call Bob Popeo in rebuttal.[13]

The Koch Parties never indicated that they were no longer considering calling Mr. Popeo.

Crestview argues that a ruling I made during the pretrial conference overrode the parties' reservation of rights and the notice that the Koch Parties gave. In the pretrial order, the parties asked me to resolve a dispute over when they would identify the schedule for "planned witnesses."[14] Each side had offered a different proposal, but both were limited to "planned witnesses." I required that the parties work out a schedule for those witnesses by noon on the Friday before the start of trial. I did not include rebuttal witnesses, and although Crestview now argues to the contrary, the parties did not seek a ruling that would

---

[12] Dkt. 1140, at 36.

[13] Dkt. 1143, Ex. B.

[14] Dkt. 1140, at 46.

9

encompass rebuttal witnesses. They framed their dispute in terms of "planned witnesses." The frequently reactive nature of a rebuttal case makes it difficult to regard rebuttal witnesses as "planned witnesses." It is also difficult to expect parties to agree in advance on what a rebuttal case would entail.

My ruling on "planned witnesses" did not mean that the Koch Parties had to identify Mr. Popeo as a rebuttal witness by noon on the Friday before trial began. Instead, they were obligated to give Crestview at least twenty-four hours' notice. The Koch Parties proceeded properly. On Thursday, July 13, 2017, counsel for the Koch Parties notified Crestview that they had decided to call Mr. Popeo as a rebuttal witness to testify on July 14, the final day of trial. Time was available on that day, but at Crestview's request, Mr. Popeo's testimony was delayed until August so that Crestview could depose Mr. Popeo and use his deposition to prepare for cross-examination. Adequate notice was provided, and the resulting opportunity for preparation eliminates any risk of prejudice to Crestview.

## III. SEQUESTRATION

Crestview further contends that Mr. Popeo cannot now testify as a rebuttal witness because the Koch Parties did not sequester him. On the facts of the case, Crestview has not shown the necessary prejudice. Instead, I will take into account the fact that Mr. Popeo sat through trial when evaluating his credibility.

Delaware Rule of Evidence 615 states:

> At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a

10

> natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.[15]

As the text of the rule demonstrates, sequestration is discretionary, but it is "usually granted unless sound reasons exist for refusal or exception."[16] "Violation of a sequestration order does not automatically result in the disqualification of a witness."[17] "[A] court ordinarily should not exclude testimony based solely on that ground."[18] The testimony of a witness who violates a sequestration order should only be excluded if there is actual prejudice to the opposing side.[19]

During the pretrial conference, a request was made to sequester fact witnesses other than party representatives. No one argued against sequestration, so I granted it.

---

[15] D.R.E. 615.

[16] *Grace v. State*, 314 A.2d 169, 170 (Del. 1973) (footnotes omitted). The *Grace* decision predated the adoption of Delaware Rule of Evidence 615. In *Grace*, the Delaware Supreme Court held that it was not error for a trial court to decline to sequester the state's chief investigative officer. The Delaware Supreme Court subsequently reached the same outcome under Rule 615. *See Burke v. State*, 484 A.2d 490, 497-98 (Del. 1984). Although Westlaw describes *Burke* as having recognized that *Grace* was superseded by Rule 615, nothing in the *Burke* decision suggests any intent to depart from the view expressed in *Grace* that sequestration of fact witnesses is presumptively available, subject to the exceptions set forth in the rule. The correlative federal rule of evidence makes sequestration mandatory if a party requests it. *See* F.R.E. 615 ("At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony.").

[17] *Fountain v. State*, 382 A.2d 230, 231 (Del. 1977).

[18] *Frank v. State*, 653 A.2d 304, 1994 WL 711444, at *2 (Del. Dec. 13, 1994) (TABLE).

[19] *See Fountain*, 382 A.2d at 231.

Notwithstanding that ruling and his identification as a potential rebuttal witness, Mr. Popeo attended all five days of trial, heard the testimony of the other witnesses, and had access to the transcript and exhibits. Because of his presence during trial, Crestview argues that Mr. Popeo should be precluded from testifying, claiming prejudice because Mr. Popeo will shape his testimony to help his client's case.

Given Mr. Popeo's role, there is minimal risk that being present for trial made any difference in his ability or willingness to shape his testimony. Mr. Popeo has been involved in this matter for years. He participated in the underlying events. He led the Mintz Levin team that litigated this case. As much as anyone, he has been immersed in the parties' factual contentions and legal theories. I frankly doubt that he heard or learned anything at trial that came as a surprise or which might have changed his understanding of the facts. If he is the type of person who would shape his testimony to fit his clients' needs, then he had the opportunity to do so long before trial. He had the opportunity to review the documents as they came in and to attend the depositions or read the transcripts as they were taken.

It is far more likely that Mr. Popeo is not that type of person at all, but that because he is human, he is subject (as we all are) to having his views and perceptions shaped by context. It is likely that in his role as counsel, Mr. Popeo has come to believe more strongly as the case has progressed in the positions that his firm has advocated on the Koch Parties' behalf. In my experience, lawyers frequently tend to become more enamored with their arguments, both factual and legal, as a case moves forward. For clients, this is often a good thing, because it makes them more confident advocates. The cost comes from a loss in objectivity. Motivated reasoning, motivated remembering, and confirmation bias are part

12

of the human condition, and particularly so for individuals who feel strongly affiliated with a particular cause or side. But here again, to the extent these tendencies have affected Mr. Popeo, they have done so over the course of months and years. They did not suddenly alter his outlook at trial.

Rather than excluding Mr. Popeo, the better route is to hear his testimony and weigh in carefully, taking into account not only his presence at trial, but also his long involvement in the case, his status as Mr. Koch's principal outside lawyer, and the subconscious effects that these roles could have. If I believe that Mr. Popeo has been overly influenced or that his account is not credible for other reasons, then I will give his testimony less weight or even discount it entirely.

## IV.    THE LAWYER AS WITNESS

Crestview finally argues that Mr. Popeo should not be permitted to testify because of the general ethical principle that "a lawyer who represents a client in a litigated matter may not also appear therein as a witness, either for or against the client."[20] In Delaware, Rule 3.7(a) of the Delaware Lawyers' Rules of Professional Conduct implements this principle. The rule states:

> A lawyer *shall not act as advocate at a trial* in which the lawyer is likely to be a necessary witness unless:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or

---

[20] *In re Estate of Waters*, 647 A.2d 1091, 1096 (Del. 1994).

> (3) disqualification of the lawyer would work substantial hardship on the client.[21]

The rule replaced a predecessor provision in the Delaware Lawyers' Code of Professional Responsibility which provided more broadly that "[a] lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness . . . ."[22] A related provision required the lawyer and his firm to withdraw if the need for testimony from the lawyer or another lawyer in the firm arose after the engagement began.[23] The narrower restriction in Rule 3.7 was adopted in large part to address "the recurrent problem of attorneys using the analogous provisions in the prior rules" as a tactical weapon to seek to disqualify opposing counsel.[24]

"[M]otions grounded on [Rule 3.7] are rare and even more rarely granted."[25] A non-client litigant only has standing to enforce the rule "when he or she can demonstrate that the opposing counsel's conflict somehow prejudiced his or her rights."[26] This may occur where there is a risk of "confusion by the trier of fact with regard to the separate roles of

---

[21] Del. Lawyers' R. Prof'l Conduct R. 3.7(a) (emphasis added).

[22] *Waters*, 657 A.2d at 1096 (quoting Disciplinary Rule 5-101(B) of the Delaware Lawyers' Code of Professional Responsibility).

[23] *Id.* (quoting Disciplinary Rule 5-102(A) of the Delaware Lawyers' Code of Professional Responsibility).

[24] *Id.* at 1097.

[25] *Dunlap v. State Farm Fire and Cas. Co.*, 2007 WL 2390682, at *14 (Del. Super. Aug. 3, 2007).

[26] *Appeal of Infotechnology, Inc.*, 582 A.2d 215, 221 (Del. 1990).

14

an advocate and a witness."[27] Prejudice also may arise in that setting because "a lawyer who attempts to double as a witness will perhaps . . . be tempted to distort the truth for the benefit of his client."[28] "[T]he concerns motivating Rule 3.7 are attenuated where . . . the witness-'advocate' is *not* someone who will be trying the case to a jury."[29] For that reason, some courts have held that the rule does not apply to non-jury proceedings.[30]

In this case, the Koch Parties faced a choice between using Mr. Popeo as an advocate at trial and preserving his eligibility as a fact witness. The Koch Parties chose not to have Mr. Popeo serve as an advocate at trial because they knew he might be needed as a rebuttal witness. Because Mr. Popeo did not "act as [an] advocate at trial," Rule 3.7 is not implicated.

Equally important, on the facts presented, Mr. Popeo's testimony will not undermine the fairness of the proceedings. This is a bench trial. I understand the difference between Mr. Popeo's role as a fact witness and his competing role as counsel to the Koch Parties. I harbor no illusions about the extent of his longstanding involvement with Mr.

---

[27] *Waters*, 647 A.2d at 1096.; *accord* Del. Lawyers' R. Prof'l Conduct R. 3.7(a) cmt. 2.

[28] *Benge v. Oak Grove Motor Court, Inc.*, 2006 WL 156840, at *2 n.2 (Del. Ch. Jan. 13, 2006) (Strine, V.C.) (internal quotations omitted).

[29] *Murray*, 583 F.3d at 180.

[30] *See Fish v. Kobach*, 2017 WL 2861668, at *2 (D. Kan. July 5, 2017) (collecting cases); *see also Corn v. Gibson*, 670 A.2d 680, 683 (Pa. Sup. 1996) (holding that the trial court erred by excluding testimony under Rule 3.7(a) because "the risk [the attorney's] testimony being given undue weight by the factfinder was . . . minimized because this was a bench trial.").

Koch, and I appreciate the ethical obligations and the professional and personal incentives that accompany that role.[31] At the same time, I appreciate—and I am confident that Mr. Popeo also appreciates—the implications of taking the stand as a fact witness and promising under penalty of perjury to tell the truth, the whole truth, and nothing but the truth.

On balance, Mr. Popeo's status as a lawyer for the Koch Parties is not a reason to prevent him from testifying. It is rather a reason to approach his testimony with care.

## V. CONCLUSION

The motion for protective order is denied. Mr. Popeo may testify as a rebuttal witness.

---

[31] *See Universal Athletic Sales Co. v. Am. Gym, Recreational & Athletic Equip. Corp.*, 546 F.2d 530, 539-40 (3d Cir. 1976) ("[W]hile a district court may in limited circumstances receive the testimony of a lawyer-witness, the value of such testimony must be discounted because of the interest of the lawyer or his firm in the outcome of the litigation.").