In The Matter of The ESTATE OF Elizabeth B. WATERS, a/k/a Elizabeth R. Waters.

No. 292, 1993.

Supreme Court of Delaware.

Submitted: Sept. 7, 1994.
Decided: Sept. 23, 1994.
Rehearing Denied Oct. 7, 1994.

---

Joseph M. Bernstein, Wilmington, for appellant.

Brian P. Murphy, Middletown, for appellee Estate of Elizabeth Waters.

Nicholas H. Rodriguez and Noel E. Primos of Schmittinger & Rodriguez, P.A., Dover, for appellee Lillian Young.

Before WALSH, HOLLAND, and HARTNETT, JJ.

HOLLAND, Justice:

This is an appeal from a decision of the Court of Chancery in an action challenging the will of Elizabeth Waters ("Waters"). The will, executed on December 16, 1988, devises and bequeaths a life estate in the decedent's real and personal property to Waters' cousin, Lillian Young ("Young"). The remainder interest is left to Waters' granddaughter and next of kin, Claire Trent ("Trent"). The will was challenged by Trent on two grounds: first, that Waters lacked testamentary capacity; and second, that Waters' will was the product of undue influence by Young and Young's family.

Following an evidentiary hearing, the Master recommended that the will be set aside because it was not subscribed to by two witnesses who could attest to Waters' testamentary capacity. Both Young and Waters' estate filed exceptions to the Master's Final Report. *See* Ch.Ct.R. 144. After reviewing the record, the Court of Chancery concluded, contrary to the Master's recommendation, that the challenge to the will was without merit and that the will had been properly admitted to probate. Trent filed this direct appeal.

During oral argument, this Court, *sua sponte*, questioned the propriety of having the scrivener of a contested will testify at trial and also participate in the proceedings as an attorney for one of the parties. *See* Del.R.Prof.C. 3.7(a). This Court has concluded that, under the facts of the case, *sub judice*, it was plain error for the scrivener to appear simultaneously as a trial advocate and testify as a witness on the contested issues presented. Accordingly, the judgment of the Court of Chancery is reversed and this matter will be remanded for a new trial.

### Facts

Waters was a widow at the time of her death. For many years, she lived in New York City. While living in New York, Waters' health declined. She grew dependent on others for assistance with the needs of daily living.

In 1983, Waters decided to return to her family home in Middletown, Delaware.[1] After Waters moved to Middletown, she was cared for by her cousin, Young. Waters was diabetic and overweight. By the end of her life, she had uterine cancer as well. Her health required regular visits to her doctor.

Waters was hospitalized in January, 1988. Waters' doctor testified that a stroke had preceded the hospitalization. According to the doctor's testimony, the stroke probably damaged the left side of Waters' brain because her right arm and her power of speech were impaired. After her release from the hospital, Waters received hospice care at home.

The 1988 hospitalization also resulted in the manifestation of a high degree of hostility between Waters' daughter-in-law (Naomi Waters) and Trent vis-a-vis Young and the Young family. Consequently, during the summer of 1988, certain members of the Young family decided that Waters should execute a will. Specifically, they wanted Waters' will to provide Young with a place to live for the rest of her life.

Young's sister, Maxine Young, contacted an attorney, Brian P. Murphy ("Murphy"). Murphy was informed that Waters was in poor physical health and that she wanted to make a will leaving her house to Lillian Young for life and, on her death, to Trent. Murphy prepared a will according to Maxine Young's instructions and without direct contact with Waters.

---

1. In 1966, Lizzie Empson, a relative of Waters, deeded a property at 118 East Anderson Street in Middletown to Waters. This was the property that Waters returned to in 1983. The house Waters received in 1966 is the major asset in her estate.

Murphy made an appointment to have the will executed at Waters' home on December 16, 1988. The record does not reflect whether Waters knew that a will was being prepared for her, or knew that an appointment had been made for her to meet a lawyer and to sign a will. In fact, the Master who heard the testimony concluded that it could not be said with certainty that Waters either wanted a will prepared or wanted this particular will prepared.

Murphy met Waters for the first time when he arrived at her home with the will. Waters was in her bedroom, attended by a visiting hospice nurse. Murphy testified that Lillian Young was present, as were others. Lillian Young testified that she was not present when the will was executed. Murphy was introduced to Waters, who pointed to her right wrist. Someone explained to Murphy that this meant for him to go to Waters' right side so that she could hear better.

Murphy told Waters that he had prepared a will for her. Murphy explained to Waters, in summary fashion, that it would leave "all [her] estate, both personal and real, of every kind and description, and wheresoever situated, including [her] home situated at 118 East Anderson Street, Middletown, New Castle County, Delaware" to Young for life. He also explained that the property would pass to Trent on Young's death. Waters made a gesture with her head when Murphy asked if this was what she wanted her will to say.

At the hearing before the Master, Murphy testified that he could not recall if Waters spoke during the December 16, 1988 visit. Murphy did recall, however, that he held the will for Waters and showed her the line for her signature while the nurse helped Waters to make an "X". Both Murphy and the nurse then signed as the subscribing witnesses. Murphy testified that, in his opinion, Waters had testamentary capacity at the time the will was signed, based on his observations at this meeting. Murphy never saw Waters again.

Murphy not only testified before the Master but represented the Waters' estate in those contested proceedings. Before the Master issued his Final Report, Murphy filed exceptions on behalf of the Waters' estate to a draft report. Murphy, as the trial advocate, argued that the Master's draft placed improper emphasis on the nurse's testimony and gave insufficient attention to the testimony of others.

The Master found Murphy's exceptions to the draft report to be without merit. The Master recommended that the will prepared by Murphy be set aside and excluded from probate. In the Final Report, the Master, who heard Murphy testify, made the following findings of facts and conclusions of law with regard to Murphy's testimony.

He had prepared a will for a client he never met or spoke with until the time he asked her to sign the will. The woman he met was debilitated from disease: a stroke had impaired her ability to hear him and to hold and sign a piece of paper, and the pain of cancer had caused her to be medicated with a narcotic. He never met with the client privately to ascertain from her the nature of her wishes, as opposed to her wishes as related by the sister of the principal beneficiary of the will. The effect of the will is to disinherit, for all practical purposes, the client's next of kin, her granddaughter. The statutory law of Delaware may not spell out in so many words the practice to be followed by a lawyer in drafting a will for a client who is a stroke victim and whose ability to comprehend may be diminished by medication, but the case law, [citations omitted] clearly indicates that a lawyer has a duty to proceed with caution when preparing a will for a client who is in very bad health and perhaps near death. *I do not believe the necessary degree of caution was exercised in this case such as to allow me to give any weight to the lawyer's testimony that Elizabeth Waters understood what she was doing when she signed her will.* He saw her only once, it is undenied that her ability to hear was impaired, and she could not speak. All she could do was gesture with her head and, with difficulty, make a mark on a piece of paper. This is not enough when one has had no prior opportunity to learn from the testator his wishes in connection with his estate. (emphasis added).

. . . .

I also think a lawyer has a duty, under the case law as developed by our courts, to exercise diligence in the representation of clients. The person making the will is the lawyer's client, not the beneficiary or the beneficiary's sister. I cannot agree that the scrivener of this will exercised appropriate diligence in ascertaining and carrying out Elizabeth Waters' wishes as to the making of a will, especially when one considers that he was approached about making the will in the summer of 1988, but never met the client until the day the will was signed, December 16 of that year.

When one considers the background information available as to Mrs. Waters' condition when the will was signed her health; her use of medication; the fact that she never had an opportunity to discuss her wishes privately with her attorney before being asked to execute her will; the fact that the registered nurse who witnessed the will testified that she could not say that Mrs. Waters understood what she was doing when she signed the will; the lawyer's testimony as to his limited opportunity to observe his client; the fact that among those present when the will was signed were persons partial to Ms. Young, rather than the granddaughter; and the fact that the will prefers a distant relation over Mrs. Waters' granddaughter, [citation omitted] it is hard to conclude that the lawyer who acted as the second witness had a sufficient basis upon which to form an opinion as to Mrs. Waters' testamentary capacity when she signed her will. *By discounting substantially his [Murphy's] testimony,* as one is entitled to do under *Miller* [*In re Miller's Estate,* Supr., 26 Del. 477, 85 A. 803 (1912) ], and by taking into account the nurse's testimony, I think it cannot be said with any conviction that there is proof of the testatrix's testamentary capacity at the critical moment. More fundamentally, however, the nurse's testimony eliminates her as a witness to Mrs. Waters' testamentary capacity, and so the will fails for lack of the necessary number of witnesses. I recommend that the will be disallowed for lack of testamentary capacity and for lack of the necessary number of witnesses. (emphasis added).

Following the filing of the Master's Final Report, Murphy continued to act as trial attorney for the Waters' estate in the contested proceedings in the Court of Chancery. Murphy filed additional exceptions and urged the rejection of the recommendation in the Master's Final Report. In his exceptions to the Master's Final Report, Murphy argued that the draft report placed an unreasonable burden on the two subscribing witnesses, i.e., himself and the nurse.

When the Court of Chancery reviewed the Master's Final Report and the exceptions to it, the court summarized the central role of Murphy's testimony before the Master as follows:

> The critical question is whether Waters had testamentary capacity when she signed the will. The neighbors and relatives who testified were not present on that occasion. The two subscribing witnesses, Murphy and Tracey [the nurse], provided the only direct evidence as to Waters' condition on the day she executed her will.
>
> . . . .
>
> Murphy . . . never met Waters before bringing the will to her house to be executed. He explained the dispositive provision of the will, satisfied himself that Waters agreed with that dispositive scheme, and assisted Waters in finding the proper line on which to enter her signature. Murphy did not make any effort to determine whether Waters was competent to execute a will, either by questioning Tracey, relatives or Waters, herself. However, Murphy testified that there was nothing about the situation he encountered at Waters' home that gave him any concern as to her competency.

The Court of Chancery ultimately declined to follow the recommendation in the Master's Final Report. It held that the will Murphy prepared had been properly admitted to probate.

When Trent appealed, Murphy continued to represent the Waters' estate. In the brief Murphy filed for the Waters' estate with this Court, he wrote:

Before ending this argument I must comment on what is a personal attack on my integrity by the caveator's attorney in hopes of overturning the Chancery Court's decision. [Trent's attorney] complains that I did not interview the testator.... As to the apparent contradictory testimony of Lillian Young and myself, I can offer no certain explanations. Many of the people who testified are unsophisticated and perhaps confuse matters of legal significance.

Following oral argument, this Court directed the parties to supplement the record with regard to why Murphy was permitted to testify on a contested matter and simultaneously remain as the trial attorney for the Waters' estate.

The record now reflects that during the pretrial discovery stages of this will contest, Murphy was deposed. Thereafter, the attorney for the caveatrix, Trent, sent Murphy the following letter:

April 18, 1991
RE: Estate of Elizabeth Waters

Dear [Mr. Murphy]:

As we discussed on the phone, it is my opinion that you should be disqualified from acting as an attorney in the above matter because you are a necessary witness concerning the circumstances surrounding the preparation and execution of Elizabeth Waters' Last Will.

In particular, your deposition testimony concerning the events leading to your preparation of the Will is in direct conflict with the testimony of Mildred Young. Also, your testimony is relevant to the issue of Elizabeth Waters' testamentary capacity, as well as the issue of undue influence.

By reason of the above facts, your disqualification to act as attorney in this matter appears to be clearly prohibited under Rule 3.7 of the Delaware Rules of Professional Conduct. I would prefer to avoid filing a formal motion with the Court concerning this matter. However, I will do so if you do not voluntarily withdraw as attorney in this matter.

Murphy replied by letter as follows: "I see no conflict of interest. Lawyers witness wills all the time." Thereafter, Trent's attorney advised Murphy by letter that a formal motion would not be filed because he had determined that his client did not have standing to move for Murphy's disqualification as a result of this Court's holding in *Appeal of Infotechnology, Inc.*, Del.Supr., 582 A.2d 215 (1990).

### Non–Client Standing
### Motion to Disqualify Attorney

■ The record reflects an apparent misunderstanding of this Court's holding in *Infotechnology*. Under the facts of the case, *sub judice,* Trent had standing to move for Murphy's disqualification. In addition, Murphy's disqualification was precisely the type of situation contemplated in *Infotechnology* for a trial court to raise *ex mero motu. See also Martin v. State,* Del.Supr., 433 A.2d 1025, 1035 (1981), *cert. denied,* 454 U.S. 1151, 102 S.Ct. 1018, 71 L.Ed.2d 306 (1982). Accordingly, the proper standard of appellate review is plain error. Supr.Ct.R. 8.

The following excerpt from *Infotechnology* appears to be the source of confusion in this case:

Absent misconduct which taints the proceeding, thereby obstructing the orderly administration of justice, there is no independent right of counsel to challenge another lawyer's alleged breach of the Rules [of Professional Conduct] outside of a disciplinary proceeding. Likewise, the trial courts have no jurisdiction to entertain such applications except as noted above.

*Appeal of Infotechnology, Inc.,* 582 A.2d at 221. The foregoing statement was made in the context of this Court's observation that motions to disqualify an opposing attorney should be "viewed cautiously because of the potential tactical abuses." *Id.*

This Court did hold the "non-client litigant does not have standing to merely enforce a technical violation of the Rules." *Id.* However, this Court specifically declined to "adopt a 'bright-line' test denying standing to all non-client litigants to challenge misconduct that taints the fairness of judicial proceedings." *Id.* In fact, this Court's corollary holding in *Infotechnology* was that a

non-client litigant *does have standing* to enforce the Delaware Rules of Professional Conduct in a trial court when they can demonstrate to the trial judge that the "opposing counsel's conflict somehow prejudiced *his* or *her* rights" and calls into question the "fair or efficient administration of justice." *Id.*

### Trial Advocate As Witness
### Rules of Professional Conduct

It is a well-established ethical principle that, "in general a lawyer who represents a client in a litigated matter may not also appear therein as a witness, either for or against the client." Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* 678 (2d ed. 1993).[2]  The Delaware Rules of Professional Conduct are patterned after the ABA Model Rules of Professional Conduct.  The current Delaware ethical provision which circumscribes the propriety of a trial advocate also serving as a witness is Rule 3.7(a):

> A lawyer *shall not act as advocate at a trial* in which the lawyer is likely to be a necessary witness except where:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client. (emphasis added).

Rule 3.7(a) superseded Disciplinary Rules 5–101(B) and 5–102(A) of the former Delaware Lawyers' Code of Professional Responsibility.  DR 5–101(B) provided:

> A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:
>
> (1) If the testimony will relate solely to an uncontested matter.

> (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
>
> (3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
>
> (4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

DR 5–102(A) provided:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

The Delaware Lawyers' Rules of Professional Conduct became effective on October 1, 1985.

One of the primary reasons for the reformulation of the prohibition against a lawyer simultaneously appearing as a trial advocate and a witness in the Model Rules of Professional Conduct was the recurrent problem of attorneys using the analogous provisions in the prior Rules as a tactical measure.  Under the prior provisions, "motions to disqualify [were] often disguised attempts to divest opposing parties of their counsel of choice." *Kalmanovitz v. G. Heileman Brewing Co.,* 610 F.Supp. 1319, 1323 (D.Del.1985).  The "likely to be a necessary witness" standard in Rule 3.7(a) is intended to be more restrictive than the "ought to be called as a witness" standard in DR 5–101(B) and DR 5–102(A). *See Cannon Airways, Inc. v. Franklin Holdings Corp.,* 669 F.Supp. 96, 99–100 (D.Del. 1987).

---

**2.** *See also* Enker, *The Rationale of the Rule That Forbids a Lawyer to Be Advocate and Witness in the Same Case,* 1977 Am.B.Found.Res.J. 455; and Lewis, *The Ethical Dilemma of the Testifying Advocate: Fact or Fancy?* 19 Hous.L.Rev. 75 (1981).

Rule 3.7(a) eliminates the ambiguity of the prior Disciplinary Code provisions. *Id.* The present, "likely to be a necessary witness," standard elevates the burden of proof needed to prevail on a disqualification motion. *Id.* It also permits the trial court to postpone ruling until it can determine whether another witness can testify.[3] *Id. See Emerald Partners v. Berlin,* Del.Ch., 564 A.2d 670, 677 (1989). Thus, both Delaware and the ABA Model Rule 3.7(a) continue "the traditional ban against an advocate also appearing as a witness in a case which he or she is handling on behalf of a client," albeit in a form more carefully tailored than its predecessors, DR 5–101(B) and DR 5–102 of the Code of Professional Responsibility. Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* 678 (2d ed. 1993).

### Prejudice to Opposing Party
### Trial Attorney as Trial Witness

The duty of a witness to state the objective truth when testifying is fundamentally different from the duty of a trial advocate to represent his or her client zealously within the bounds of the law. The personal credibility of a witness is always at issue and often subjected to vigorous cross-examination for purposes of impeachment. A trial advocate may not vouch for the credibility of a witness or state a personal belief in the merit of his or her client's position. Del.R.Prof.C. 3.4(e). *See Jardel Co. v. Hughes,* Del.Supr., 523 A.2d 518 (1987); *Saunders v. State,* Del.Supr., 602 A.2d 623 (1984); *Joseph v. Monroe,* Del. Supr., 419 A.2d 927 (1980); and *Hooks v. State,* Del.Supr., 416 A.2d 189 (1980).

In fact, one of the rationales for prohibiting the dual lawyer-witness situation in a contested proceeding is to prevent confusion by the trier of fact with regard to the separate roles of an advocate and a witness. That rationale is explained as follows:

> Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client.

> The opposing party has proper objection where the combination of roles may prejudice that party's right in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

Delaware and Model Rules of Professional Conduct Rule 3.7 (commentary).

"The interest of the opposing party protected by Rule 3.7 is parallel to that protected by Rule 3.4(e), which forbids an advocate from voicing personal opinions about the merits of a cause." Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* 680 (2d ed. 1993). Rule 3.7 and Rule 3.4(e) both prohibit the mixing of advocacy and testimony. *Id.* There are multiple threats to the integrity of the judicial proceedings if a trial advocate also testifies as a trial witness regarding a contested issue, e.g., (i) the attorney may either be accused of distorting the truth for the client's benefit or testifying truthfully to the client's detriment; (ii) the attorney may, perhaps even inadvertently, interject unsworn testimony into the cross-examination of other witnesses; (iii) the attorney may be called upon by other evidence to argue his or her own

---

**3.** In the context of representation before commencement of the actual trial, the ABA Standing Committee on Ethics and Professionalism "agrees with those courts that hold the lawyer-witness rules should not apply to disqualify a lawyer from serving as an advocate before the lawyer has testified." ABA Comm. on Ethics and Professional Responsibility, Informal Op. 1503 (1983). According to the ABA Standing Committee on Ethics and Professionalism, "the primary test to be applied is whether the lawyer-witness's testimony involves a contested issue in the proceeding at which the lawyer proposes to serve as advocate.... There are, however, some limitations on pre-trial representation in these circumstances that should be observed.... The Committee recognizes that the Rule 3.7 prohibition applies specifically to service 'as advocate at a trial.' The Committee nevertheless believes that the policy behind the prohibition applies to any situation where the lawyer is placed in the position of arguing the lawyer's own veracity to a court or other body, whether in a hearing on a preliminary motion, an appeal or other proceeding." ABA Comm. on Ethics and Professional Responsibility, Informal Op. 1529 (1989).

**1098**

credibility to the trier of fact; (iv) the attorney may, in effect, give "unsworn" testimony during arguments to the trial judge and/or jury.

■ Under the facts of this case, the centrality of Murphy's testimony to the contested issues of undue influence and testamentary capacity mandated his withdrawal as trial attorney.[4]  Del.R.Prof.C. 1.16(a)(1); 3.4(e); and 3.7.  Unlike other members of the Delaware Bar confronted by the same ethical obligation in the past, Murphy failed to recognize his duty as a lawyer/witness to withdraw, even after opposing counsel called it to his attention.  *Martin v. State*, Del. Supr., 433 A.2d 1025, 1035 (1981).  *See also, e.g.*, *State v. Bailey*, Del.Super., 519 A.2d 132, 133 (1986).  That is why trial judges have the power to disqualify trial counsel, when necessary, to preserve the integrity of the adversary process in the actions before them.  *Appeal of Infotechnology, Inc.*, 582 A.2d 215, 221–22.

### Conclusion

The Court of Chancery had full power to control the parties and counsel to ensure the fairness of the proceedings.  *Id.*  It was plain error to permit Murphy to undermine the integrity of the adversary process by participating as a trial attorney in a proceeding in which he was a central witness on the contested issues being adjudicated.  *Martin v. State*, 433 A.2d at 1035.  The judgment of the Court of Chancery is REVERSED.  This matter is remanded for a new trial.  The Clerk is directed to send a copy of this opinion to the Office of Disciplinary Counsel.[5]

---

4.  Even when it is demonstrated that a lawyer is "likely to be a necessary witness," disqualification is not required when any one of the three exceptions in Rule 3.7 applies.  The record reflects that none of the exceptions excused Murphy's participation as trial counsel.

5.  The lawyer-witness rule, like many rules dealing with the trial process, can be enforced either by the tribunal in the course of the litigation or by a disciplinary authority after the fact.  If the tribunal determines that a sanction is appropriate, it normally disqualifies the lawyer from continuing as advocate.  If an advocate should have withdrawn but did not, the mandatory withdrawal provisions of Rule 1.16(a)(1) can be applied as a matter of discipline, for the continuing representation will have resulted in violation of the Rules of Professional Conduct, namely Rule 3.7.
Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* p. 680.1 (2d ed. 1993).