# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

SUN LIFE ASSURANCE COMPANY )
OF CANADA )
                    Plaintiff, )
                     )
                     )
     v. )
                     )
WILMINGTON SAVINGS FUND SOCIETY, )
FSB, Solely as Securities Intermediary )
                 Defendant. )
                     )   **C.A. No. N18C-08-074**
                     )        **PRW CCLD**
WILMINGTON SAVINGS FUND SOCIETY, )
FSB, Solely as Securities Intermediary )
           Counterclaim-Plaintiff, )
                     )
     v. )
                     )
SUN LIFE ASSURANCE COMPANY )
OF CANADA )
          Counterclaim-Defendant. )

Submitted: September 20, 2019
Decided: December 19, 2019

## MEMORANDUM OPINION AND ORDER

*Upon Defendant/Counterclaim-Plaintiff's Motion to Disqualify,*
**GRANTED**.

Simon E. Fraser, Esquire and Thomas Francella, Esquire, Cozen O'Connor, Wilmington, Delaware, Attorneys for Plaintiff and Counterclaim-Defendant.

Steven L. Caponi, Esquire and Matthew B. Goeller, Esquire, K&L Gates LLP, Wilmington, Delaware, Attorneys for Defendant and Counterclaim-Plaintiff.

**WALLACE, J.**

Plaintiff Sun Life Assurance Company of Canada issued a life insurance policy in the amount of $6 million to Gordon Bartelstein in May 2007 (the "Policy"). The current beneficiary of the policy is EP Legacy Trust C ("EPL Trust"), whose beneficiary in turn is 2018 Life Settlement LP, previously known as Ocean Gate Life Settlement Program LP. Wilmington Savings Fund Society, FSB ("WSFS") is securities intermediary for the beneficiaries.

This suit is Sun Life's attempt to obtain a judicial finding that the Policy is void as a stranger-oriented life insurance ("STOLI")[1] wager on Bartelstein's life procured for investors lacking any insurable interest therein. WSFS's counterclaims: (1) assert that the Policy was procured for Bartelstein's wife and validly assigned; (2) demand payment of the face policy benefits; and, (3) seek recovery for unfair trade practices and other related causes of action.

The instant Motion to Disqualify concerns prior representation by Sun Life's current counsel, Cozen O'Connor ("Cozen") of Ocean Gate on matters allegedly related to the Policy. [2]

---

[1] Some identify STOLI as "stranger-originated life insurance." *E.g. United States v. Carpenter*, 190 F.Supp.3d 260, 264 (D. Conn. 2016); *Wells Fargo Bank, N.A. v. Pruco Life Ins. Co.*, 200 So.3d 1202, 1203 (Fla. 2016). The Court accords here with *United States v. Binday* in terming the Policy stranger-*oriented*—recognizing that the concept also covers circumstances where an individual insures his or her own life at the behest of investors, to whom the policy and payments are later assigned. 804 F.3d 558, 565-66 (2nd Cir. 2015).

[2] Sun Life has also filed a separate motion (D.I. 116) seeking limited discovery into whether the EPL Trust still owns the Policy and other alleged STOLI policies, and asking for the Court to delay a decision until the completion of that discovery. Because the Court is granting relief under

## I. APPLICABLE LEGAL STANDARDS

The Court has the power to disqualify counsel for a conflict of interest it finds violates the Delaware Lawyers' Rules of Professional Conduct (the "Delaware Conduct Rules").[3] But "disqualification of counsel is an extreme remedy that should be employed only when necessary to ensure the fairness of the litigation process."[4] And disqualification motions are generally disfavored because they are too often filed for tactical reasons.[5]

A motion to disqualify counsel must be grounded on clear and convincing evidence establishing a violation of the Delaware Conduct Rules.[6] Evidence is clear and convincing when it produces an abiding conviction that the truth of the

---

this Motion for the reasons explained further in this Opinion and Order, and because certain of those reasons have to do with evidence of Cozen's earlier involvement that will still be relevant in WSFS's defense no matter who is the ultimate beneficiary is, Sun Life's request for limited discovery is **DENIED** as moot.

[3]      *Acierno v. Hayward*, 2004 WL 1517134, at *4 (Del. Ch. July 1, 2004).

[4]      *Fernandez v. St. Francis Hosp., Inc.*, 2009 WL 2393713, at *5 (Del. Super. Ct. Aug. 3, 2009).

[5]      *Acierno*, 2004 WL 1517134, at *4; *Harper v. Beacon Air, Inc.*, 2017 WL 838224, at *3 (Del. Super. Mar. 2, 2017).

[6]      *Dunlap v. State Farm Fire and Cas. Co. Disqualification of Counsel*, 2008 WL 2415043, *1 (Del. 2008).

contentions is highly probable.[7] This standard is more exacting than a mere preponderance, but less than beyond a reasonable doubt.[8]

It is rare for a Delaware court to deny a party's engagement of its chosen counsel.[9] The conflict found before doing so must be "so extreme that it calls into question the fairness" of the proceeding.[10] Only potential unfairness towards a party can necessitate disqualification as opposed to a less extreme remedy.[11] Divining such unfairness requires "painstaking analysis of the facts."[12] And then the interests of fairness and of the right to chosen counsel must be weighed with "cautious scrutiny" before disqualifying counsel.[13]

---

[7]     *In re Bailey,* 821 A.2d 851, 863 (Del. 2003).

[8]     *Matter of Rowe,* 566 A.2d 1001, 1006 (Del. Jud. 1989).

[9]     *Avacus Partners, L.P. v. Brian,* 1990 WL 27538, n.7 (Del. Ch. Mar. 9, 1990).

[10]     *Appeal of Infotechnology,* 582 A.2d 215, 221 (Del. 1990); *Dunlap,* 2008 WL 2415043, at * 1 (citing *Unanue v. Unanue,* 2004 WL 602096, at *2 n.17 (Del. Ch. Mar. 25, 2004) ("Vague and unsupported allegations are insufficient to meet this [disqualification] standard.")).

[11]     *Matter of the Estate of Waters,* 647 A.2d 1091, 1095-96 (Del. 1994).

[12]     *Satellite Fininacial Planning Corp. v. First Nat. Bank of Wilmington,* 652 F.Supp. 1281, 1283 (D. Del. 1987) (internal quotations and citations omitted); *Avacus Partners, L.P. v. Brian,* 1990 WL 27538, at *4 n.7 (Del. Ch. Mar. 9, 1990) ("[C]ontext must matter.").

[13]     *Satellite Fininacial,* 652 F.Supp. at 1283 (internal quotations and citations omitted); *see also United States v. Miller,* 624 F.2d 1198, 1202 (3d Cir. 1980) (Observing that while a "[trial] court's power to disqualify derives from its inherent power to supervise the professional conduct of attorneys appearing before it" and such court "has wide discretion in framing its sanctions to be just and fair to all parties involved, . . . the court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule.") (internal citations and quotations omitted).

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. CONCURRENT LITIGATION AND WSFS'S WAIVER.

Cozen is WSFS's longstanding outside counsel and currently manages an ongoing matter for WSFS involving life insurance trusts ("Concurrent Litigation").[14] Just two days after Sun Life filed the original Complaint, WSFS learned that Cozen was representing Sun Life in this action.[15] Given the apparent incipient conflict of interest, WSFS contacted Cozen insisting that Cozen withdraw from representing Sun Life.[16]

Following negotiations, the parties reached an agreement memorialized in a letter signed in August 2018 by John Olson of and on behalf of WSFS, and Jeff Cedrone of and on behalf of Sun Life (the "Conflict Agreement").[17] The Conflict Agreement included Sun Life's assurance that "[Sun Life] is not pursuing in any manner, and will not be pursuing in any manner, any claim(s) against [WSFS] for any money judgment or affirmative monetary relief."[18] Reciprocally, WSFS agreed

---

[14]    Aff. of Olsen ¶ 2, Ex. A.

[15]    *Id.* ¶ 2.

[16]    *Id.* ¶ 3.

[17]    *Id.* Ex. A.

[18]    *Id.*

that "there is no disabling conflict and [WSFS] will not claim or contend that Cozen O'Connor should be disqualified."[19]

## B. COZEN'S PREVIOUS RELATED REPRESENTATION OF OCEAN GATE.

The alleged conflict of interest underlying the instant Motion to Disqualify Counsel arises not from the Concurrent Litigation, but from Cozen's prior representation of Ocean Gate.[20] Ocean Gate has since been renamed 2018 Life Settlement LP, but is the same entity and the current beneficiary of the EPL Trust and thus the ultimate beneficiary of the Policy.[21]

Ocean Gate managed investment portfolios that included life insurance assets.[22] Ocean Gate's investment model involved acting through an aggregator to purchase beneficiary rights to an array of existing life insurance policies for which it had no prior contact with the insured, trustee, or beneficiary.[23] Ocean Gate contends in this suit that it became the ultimate owner of the beneficial interest in

---

[19] *Id.*

[20] Aff. of Kiefer ¶ 6.

[21] *Id.*

[22] *Id.* at 5.

[23] *Id.*

the Policy through this process.[24] The California Public Employees' Retirement System ("CalPERS") is the majority owner and secured creditor of Ocean Gate.[25]

In order to perform due diligence when considering a 2010 loan to Ocean Gate, CalPERS and Ocean Gate retained Cozen as special regulatory counsel to evaluate the validity and enforceability of the life insurance policies in Ocean Gate's investment plan under the laws of various states.[26] Ocean Gate and CalPERS disclosed confidential information to Cozen in order to permit Cozen to fully analyze the legal status of these assets.[27]

Cozen prepared at least five opinion letters (collectively, the "Opinion Letters") discussing, among other things, (i) the facts about Ocean Gate's proposed investment program, (ii) pertinent state insurance law principles such as insurable interest, transfer of insurance assets, and the contestability of life insurance policies, and (iii) existence of an insurable interest and the potential to collect death benefits

---

[24] Aff. of Kiefer ¶¶ 2–4.

[25] *Id.* ¶¶ 7, 8.

[26] *Id.* ¶ 10.

[27] *Id.* ¶ 11.

under those policies.[28]  The Opinion Letters provided analysis under the laws of Florida, California, New Jersey, New York, and Delaware.[29]

WSFS advised Cozen of the newly-discovered Sun Life conflict of interest as to the prior matter in December 2018 and requested Cozen voluntarily withdraw.[30] Cozen refused, claiming that the Conflict Agreement waived any conflict of interest.[31]  Cozen also noted that "in the event WSFS fails to abide by [the Conflict Agreement], Sun Life would obviously be unconstrained by the agreement and free to pursue claims directly against WSFS."[32]

## C. COZEN'S ETHICS SCREEN.

Three days after WSFS revealed the alleged conflict, Cozen instituted a "computer lock-out" preventing Cozen attorneys representing Sun Life in this case (the "Sun Life Team") from accessing all files related to Cozen's previous work with Ocean Gate."[33]  Additionally, all physical files related to the previous work were collected and delivered to Cozen's Conflicts Counsel.[34]  Cozen also promptly

---

[28]     *Id.* ¶ 13.

[29]     *Id.* ¶¶ 12, 14, Ex. A.

[30]     *Id.* Ex. F.

[31]     *Id.*

[32]     Aff. of Foresta, Ex. H.

[33]     Aff. of Fox ¶ 10.

[34]     *Id.*

prepared and circulated a formal ethics screen (the "Ethics Screen").[35] The Ethics

Screen prohibits the Sun Life Team from accessing files and discussing confidential

information related to the previous work with Ocean Gate, and is enforced through

a disciplinary system whose sanctions can include dismissal.[36] The Court has

absolutely no doubt that Cozen's attorneys have fully complied with the Ethics

Screen.[37]

## III. DISCUSSION

### A. COZEN'S REPRESENTATION OF SUN LIFE HERE IMPLICATES ITS DUTY OF LOYALTY TO A FORMER CLIENT.

Delaware Conduct Rule 1.9 explains and governs attorneys' duties to former

clients:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.[38]

Therefore, to show that an opposing counsel's current representation would

run afoul of Rule 1.9, the moving party must show that "(1) the lawyer had an

---

[35]     *Id.* ¶ 11.

[36]     *Id.*

[37]     Aff. of Miller. ¶ 31.

[38]     Del. Lawyers' R. Prof'l Conduct 1.9(a) (2019).

attorney-client relationship with the former client; (2) the present client's matter is the same or substantially related to the first client's matter; (3) the interests of the second client must be materially adverse to the former client; and (4) the former client must not have consented to the representation after consultation."[39] WSFS presents sufficient evidence demonstrating that Cozen's representation of Sunlife meets all four criteria.

### 1. *The parties agree that Cozen represented Ocean Gate.*

Cozen admits it had an attorney-client relationship with Ocean Gate.[40] So, while the parties dispute whether Cozen represented CalPERS on this matter as well, that need not be resolved. The prior Ocean Gate representation alone satisfies the first Rule 1.9 element.

### 2. *The present action is substantially related to Cozen's previous work for Ocean Gate.*

Matters are substantially related under Delaware Conduct Rule 1.9 "if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in

---

[39] *Bowden v. Kmart Corp.*, 1999 WL 743308, at *1 (Del. Super. Ct. July 1, 1999) (citing *Nemours Foundation v. Gilbane, Aetna, Federal Ins. Co.*, 632 F.Supp 418, 422 (D. Del 1986)).

[40] Aff. of Fox ¶ 5.

the prior representation would materially advance the client's position in the subsequent matter."[41]

Cozen's extensive investigation into the procedures Ocean Gate and the aggregators followed in acquiring life insurance contracts are closely related to how Ocean Gate behaved in acquiring the Policy. Sun Life alleges that when Bertelstein obtained the Policy in 2007, he misrepresented his wealth and income at the specific behest of the investors with whom he had contracted to secretly assign the Policy without informing Sun Life.[42] Cozen's inquiry into Ocean Gate's practices in 2010 thus potentially uncovered conduct that informs the truth or falsity of the allegations in this suit, constituting the same matter and not merely a similar one.

### 3. *Sun Life has materially adverse interests to its former client.*

Though Ocean Gate has undergone several name changes, the entity has not been dissolved, nor has any other legal event severed the continuity of its existence and interests.[43] Because Ocean Gate, under its new name, is the beneficiary of the policy Sun Life seeks to void, Sun Life's interests are directly adverse.[44]

---

[41]   Del. Lawyers' R. Prof'l Conduct 1.9, cmt. 3 (2019).

[42]   Aff. of Miller ¶ 25.

[43]   Aff of Fox ¶¶ 15, 16.

[44]   Aff. of Kiefer ¶ 9.

### 4. *No purported consent from WSFS relieves Cozen of its Delaware Conduct Rule 1.9 obligations.*

The Conflict Agreement is a contract, and as such the first and most important interpretive source is its text.[45] The parties disagree as to the scope of conflicts disclaimed by the text. Sun Life urges a broader reading, denying all conflicts known and unknown. Even assuming Sun Life's broader reading is correct, the Conflict Agreement does not relieve the Court of its duty to ensure the fairness of the litigation process in this case and the appropriateness of counsel's representation under Delaware's rules.

The Delaware Conduct Rules' prohibition against conflicts with past clients recognizes an exception only for informed consent in writing from the *former client*, not the later adverse party.[46] WSFS may be the now-adverse party, but Ocean Gate is the former client here. So it is hardly clear that WSFS was empowered to provide the consent needed. But that does not settle the further question Cozen has raised: Whether the Conflict Agreement bars WSFS from *filing a motion to disqualify* Cozen, or what position WSFS can take on any such motion?

---

[45] *See Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) ("clear and unambiguous language in an agreement will be given its ordinary and usual meaning").

[46] Del. Lawyers' R. Prof'l Conduct 1.9 (2019).

Granted, the Conflict Agreement language might support a broad reading requiring WSFS to refrain from filing such a motion and opposing one should others raise them.[47] But, when appropriate, the Court has the authority to consider disqualification *sua sponte*.[48] Had WSFS merely brought the later-discovered (*i.e.,* post-Conflict Agreement) disqualification concern to the Court's attention, the Court would have had the parties provide the necessary background of the concern WSFS had uncovered and brief the disqualification issue. The vehicle by which this concern arrived to the Court, therefore, is of little moment. But the Court should, at least, address whether WSFS now has a contractual obligation under the Conflict Agreement to resist Cozen's disqualification.

Each counsel before this Court is not only "a representative of clients" but also "an officer in the legal system" and when potential conflicts between these responsibilities arise they "must be resolved through the exercise of sensitive professional and moral judgment guided by the basic principles underlying the [Delaware Conduct] Rules."[49] These include transparency and forthrightness to the

---

[47] *See* Aff. of Olsen, Ex. A ("WSFS. . . will not claim or contend that Cozen O'Connor should be disqualified from representing Sun Life with respect to the litigation concerning the policy at issue.").

[48] *See Dunlap v. State Farm Fire and Cas. Co. Disqualification of Counsel,* 2008 WL 2415043, *1 (Del. May 6, 2008) (where trial court to disqualifies an attorney *sua sponte* it must do so via issuance of a written opinion or ruling on the record amenable to appellate review).

[49] Del. Lawyers' R. Prof'l Conduct, pmbl. ¶¶ 1, 9 (2019) ("In the nature of law practice, [] conflicting responsibilities are encountered.").

Court, independence of counsel's professional judgment, and a duty to aid in securing observance of professional duties required by others.[50] These principles would be contravened if a contract could bind parties and their counsel to take a particular position on an ethical dilemma before the facts or even existence of the dilemma were known to them. The Court therefore declines to read such a repugnant intent into the Conflict Agreement.

**B. GIVEN THE UNIQUE FACTS PRESENTED, THE FAIRNESS OF THE LITIGATION PROCESS IN THIS SPECIFIC CASE CANNOT BE ENSURED IF COZEN IS PERMITTED TO CONTINUE ITS REPRESENTATION OF SUN LIFE.**

Even after showing a conflict under Delaware Conduct Rule 1.9, that conflict does not merit disqualification absent the additional showing that it would, if permitted, "prejudice the fairness of the proceedings"[51] as to WSFS.[52] WSFS argues confidential disclosures from Ocean Gate give Cozen an unfair advantage.[53] Additionally, it points to the possibility of the Opinion Letters being evidence brought before the jury.[54]

---

[50] *See generally* Del. Lawyers' R. Prof'l Conduct 3.3 (2019) (requiring candor to the Court); *id.*, pmbl. ¶ 12 ("A lawyer should also aid in securing the[ ] observance [of the Delaware Conduct Rules] by other lawyers. Neglect of these responsibilities compromises the independence of the profession and the public interest it serves.").

[51] *Appeal of Infotechnology*, 582 A.2d 215, 221 (Del. 1990).

[52] *Matter of the Estate of Waters*, 647 A.2d 1091, 1095-96 (Del. 1994).

[53] WSFS Br., at 28.

[54] *Id.* at 29 n. 7.

Sun Life in response argues that no confidential disclosures from Ocean Gate materially affect the present action,[55] and Cozen's Ethics Screen prevents any risk of prejudice.[56]

Both of these responses address only the first of WSFS's arguments. Cozen implemented an Ethics Screen—to which the Court has no doubt it has strictly adhered—immediately upon learning of the connection with the prior matter.[57] The Court credits that no confidential information entrusted to Cozen in the course of its representation of Ocean Gate has been misused, and that the safeguards Cozen has implemented are more than adequate to prevent any future misuse and ensure WSFS will not be prejudiced by confidential disclosures from the earlier representation.

Cozen's screen, however, does nothing to safeguard the proceedings from prejudice that may come from Cozen's Opinion Letters being important sources of evidence in WSFS's case.

Cozen interviewed Ocean Gate's principals about the investment program.[58] To create the Opinion Letters, Cozen received and considered internal transaction

---

[55]     Sun Life Br., at 16.

[56]     *Id.* at 19.

[57]     Aff. of Miller ¶¶ 28-31.

[58]     Aff. of Kiefer ¶ 11.

documents related to the program.[59]  Cozen considered the actual conduct Ocean

Gate and its affiliates undertook in procuring policies.[60]  Even if the procurement of

the Policy itself was not discussed, when Cozen interviewed Ocean Gate personnel

and collected information on their general behavior, that constitutes strong evidence

which a fact finder can consider in determining how Ocean Gate behaved in the

specific instance of acquiring the Policy.[61]

The Opinion Letters, and the testimony of the attorneys who produced them,

at this albeit early stage of the litigation appear to be relevant evidence that WSFS

will likely seek admission of at trial.  The credibility of the Cozen attorney-authors

would potentially be a question before the jury submitted by a party whose opponent

---

[59]  *Id.*

[60]  Florida Opinion Letter 3-5 ("We [Cozen] have been advised of the following facts by the Purchaser [Ocean Gate] and nothing in our Interview with the Aggregator [Dearborn Capital Partners, LLC] was inconsistent therewith . . . . [A]t no point prior to or during the procurement of the Policy did the Purchaser, the Aggregator, the Agent, or any of the Purchaser's, Aggregator's or Agent's affiliates, officers, directors, employees, agents or representatives: (i) enter into any agreement, or make any offer to enter into any agreement, whether oral, written or otherwise, to Purchase the Policy or any interest in the Trust from any party, including but not limited to the Insured, Trustee, or Initial Beneficiary, or any representative or agent of the Insured, Trustee, or Initial Beneficiary or (ii) purchase or offer to purchase the Policy or any interest in the Trust from any party, including but not limited to the Insured, Trustee, or Initial Beneficiary, or any representative or agent of the Insured, Trustee, or Initial Beneficiary.  At no point prior to or during the procurement of the Policy did the Purchaser, the Aggregator or any of the Purchaser's or Aggregator's affiliates, officers, directors, employees, agents or representatives have any contact with the Insured, Trustee or Initial Beneficiary, or any affiliates, officers, directors, employees, agents or representatives thereof.").

[61]  *See* Delaware Rule of Evidence 406 ("Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice").

is represented by Cozen itself. Irrespective of the circumspection of Cozen's attorneys in this case, this alignment has the potential for great prejudice to WSFS.

Because disqualification is only called for when a party in the current case is prejudiced, it is infrequently appropriate to remediate conflicts under Delaware Conduct Rule 1.9.[62] However, the "specter of switching sides" is a key evil Delaware Conduct Rule 1.9 is intended to prevent, and that specter is sharpened by the likelihood of the prior representation coming before a jury.[63] If it is the jury that watches this unfold, there are two possible views it may take: (1) that Cozen has greater credibility now because it is owning up to any possible lapse in its earlier advice on this issue—advantage Sun Life; or (2) that Cozen will argue whichever side of the same question its current client will pay for—advantage WSFS. Either is intolerable and avoidable.

Even if the jurors could be personally shielded from knowledge that Sun Life's attorneys are also with Cozen, there is an appearance of duplicity that the Rules guard against.[64] Where the public's confidence in the administration of justice

---

[62] *See Manning v. Vellardita*, 2012 1072233, *3-4 (Del. Ch. Mar. 28, 2012).

[63] *See EON Corp. IP Holdings LLC v. Flo TV Inc.*, 2012 WL 4364244, *5 (D. Del. Sept. 24, 2012) (Specter of "switching sides" is attenuated by time elapsed between representations, but magnified when prior attorneys or materials would come before the jury, and even when the jury itself can be shielded "would give rise to the perception by the general public that the rules are designed to avoid.").

[64] *Id.*

is implicated, disqualification may be appropriate to avoid "even the appearance of improvierty."[65]

## C. POSSIBLE INCONVENIENCE TO SUN LIFE.

The Court must next consider the inconvenience of disqualification to Sun Life. Disqualification most greatly prejudices counsel's current client when that counsel has represented the client on similar cases in the past and if disqualification would result in significant cost or delay.[66] However, disqualification is less prejudicial when it is raised early in the litigation.[67]

To be sure, Cozen's disqualification would impact Sun Life—but not significantly. Cozen's Sun Life Team has represented Sun Life generally for twenty years and on STOLI matters for ten years.[68] But at argument Cozen was forthright: the current members of the Sun Life Team joined the firm in 2018 or later, and

---

[65]     *IBM v. Levin*, 579 F.2d 271, 283 (3rd Cir. 1978).

[66]     *See Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*, 142 F.Supp.2d 579, 584 (D. Del. 2001) (rejecting disqualification of client's longstanding counsel which had extensive familiarity with the factual and legal issues of the complex case through thousands of hours billed and through representing the client on twenty-one related cases).

[67]     *See Intellectual Ventures I LLC v. Checkpoint Software Technologies Ltd.*, 2011 WL 2692968, *14 (D. Del. Jun. 22, 2011) (timing favors disqualification early in litigation, before a trial date is set); *End of Road Tr. v. Terex Corp.*, 2002 WL 242464, *3 (D. Del. Feb. 20, 2002) (rejecting disqualification when trial is imminent and disqualification would thus impose substantial delay and expense).

[68]     Sun Life Br., at 3.

- 18 -

Cozen's local counsel joined in 2015.[69] Cozen is undoubtedly familiar with the factual and legal issues of this case, but the matters are not so technical as to prevent another firm from quickly familiarizing itself. Moreover, the motion arises in the early stages of litigation.[70]

Cozen urges the Court to deny disqualification by analogy to *Dollar Tree, Inc. v. Dollar Express LLC*.[71] In that case, a law firm advised consultants on a corporation's dividend issuance, then later represented the corporation's suppliers against the corporation in a suit that prominently featured an attack on the legality of the dividend.[72] The non-party consultants sought disqualification since the firm would be required to discredit work on which it had advised.[73] That work, however, was produced by the consultants with the advice of the law firm, rather than being a product of the law firm directly.[74] The distinction is important, and goes directly to the specific appearance of duplicity which concerns the Court here.

---

[69]     Hr'g. Tr. at 12.

[70]     In a letter sent by Cozen on behalf of Sun Life, a Cozen attorney noted that WSFS brought up the issue and requested withdrawal on December 7, only 17 days after filing the Answer to the Complaint. Foresta Aff., Ex. F.

[71]     *Dollar Tree, Inc. v. Dollar Express LLC*, 2017 WL 5624298 (Del. Ch. Nov. 21, 2007).

[72]     *Id.* at *1.

[73]     *Id.*

[74]     *See Id.* at *3 ("this action would require [the firm] to discredit the same work on which it advised [the consultants]").

Overall, the balance of factors calls for Cozen's disqualification in this particular case. Disqualification inevitably imposes costs and delays, but the prejudice to WSFS—made more severe by the appearance of impropriety—outweighs the inconvenience to Sun Life. Even if Cozen's Ethics Screen completely prevents the disclosure of restricted information—and the Court does not, for a moment, doubt Cozen's representations to that effect—the specter of Cozen "switching sides" is unacceptable. As a result, Delaware Conduct Rule 1.9 and the Court's duty to ensure fairness in this litigation requires disqualification.

## IV. CONCLUSION

Cozen's conflict with the Concurrent Litigation does not disqualify it because WSFS validly waived that conflict in exchange for Sun Life's assurances in the Conflict Agreement, which remain fully in force.

But the Court must conclude under the specific facts presented here that Cozen cannot, consistent with the Delaware Lawyers' Rules of Professional Conduct, represent Sun Life in this matter due to their past representation of Ocean Gate. Sun Life's position is adverse to Ocean Gate's, and the matters are intimately connected. So much so, that Sun Life's attorneys, Cozen, will likely be forced to confront Cozen's own prior work product. Despite Cozen's prompt and sound efforts to safeguard Ocean Gate's confidence, and without fault to Cozen attorneys' diligence, integrity, or professionalism, the Court cannot countenance such an eventuality.

There should be no mistake; the Court here has no doubt each attorney and firm has behaved honorably and forthrightly throughout their representation—past and present—of the parties involved in this litigation. But the Court likewise has no doubt that this case presents a unique alignment of facts and factors which requires employ of the extreme and rare remedy of disqualification of counsel to ensure the fairness of the litigation process.

WSFS's motion to disqualify counsel is therefore **GRANTED.**

**IT IS SO ORDERED.**

Paul R. Wallace, Judge

Original to Prothonotary

cc:    All Counsel via File and Serve